### FERNANDO FRILLICI ET AL. v. TOWN OF WESTPORT ET AL.
### (SC 16820)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued January 14—officially released June 10, 2003

*Lawrence J. Merly,* for the appellants (plaintiffs).

*Stuart M. Katz,* with whom were *Barbara M. Schellenberg* and, on the brief, *G. Kenneth Bernhard,* for the appellees (defendants).

SULLIVAN, C. J. This appeal arises out of protracted litigation concerning the exercise of jurisdiction by the named defendant, the town of Westport (town), over Cockenoe Flats, recreational clamming beds located off of the coast of the town. On July 8, 1987, the plaintiffs[1] initiated this action against the defendants[2] by means of a seven count complaint[3] challenging the town's exercise of jurisdiction. The trial court concluded that the town had jurisdiction over Cockenoe Flats and, accordingly, rendered judgment for the defendants on all counts. The plaintiffs appealed and, in *Frillici* v. *Westport*, 231 Conn. 418, 650 A.2d 557 (1994), we concluded that the state has jurisdiction over this area. We affirmed

[1] The plaintiffs are three individual recreational clammers, Fernando Frillici, John Posh, Melvin Hartman, Jr., and two sportsmen's associations, the Connecticut Saltwater Sportsmen's Protective Association, Inc., and the Fairfield County League of Sportsmen's Clubs, Inc.

[2] The original defendants were the town, the Westport shellfish commission (commission), the state of Connecticut, the state department of agriculture, and the former commissioners of agriculture, Kenneth B. Andersen and John R. N. Blum. Following this court's decision in *Frillici* v. *Westport*, 231 Conn. 418, 650 A.2d 557 (1994), the only remaining defendants are the town and the commission.

[3] The plaintiffs' amended complaint sought: (1) injunctive relief against the town's continued exercise of jurisdiction over Cockenoe Flats; (2) damages from the town and the Westport shellfish commission for violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; (3) damages from Kenneth B. Andersen for deprivation of the plaintiffs' property and liberty interests in violation of the plaintiffs' rights under 42 U.S.C. § 1983 et seq.; (4) damages from Andersen for due process violations pertaining to a hearing held under General Statutes § 26-195 on or about February 27, 1986; (5) damages from the town and the commission for deprivation of the plaintiffs' property and liberty interests in violation of 42 U.S.C. §§ 1983, 1985 and 1986; (6) damages from the town and the commission for a taking of the plaintiffs' property and liberty interests without due process of law in violation of the fifth amendment to the United States constitution and article first, § 11, of the Connecticut constitution; and (7) damages from the town and the commission for conduct that was "wilful, malicious, arbitrary, capricious and with strong hand."

the trial court's judgment in part[4] and reversed it in part, remanding the case to the trial court for a determination of counts one, two and seven. Id., 440. Following a trial to the court, the trial court rendered judgment for the defendants on the remaining three counts. This appeal followed.[5]

On appeal, the plaintiffs contend that the trial court improperly: (1) concluded that the plaintiffs failed to sustain their burden of proof on their claim that the defendants' conduct was wilful and wanton misconduct; (2) denied the plaintiffs' request for an injunction compelling the defendants to refund permit money collected in the course of exercising jurisdiction over Cockenoe Flats; (3) failed to consider and award general damages to the plaintiffs under count one of the amended complaint; and (4) awarded costs to the defendants. We affirm the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. "The subject of this dispute is an area of submerged land in navigable waters off the shore of Westport. This area is commonly known as Cockenoe Flats, and lies off Westport's shore between an area known as Saugatuck Shores and Cockenoe Island, which is about three quarters of a mile offshore. Although the parties disagree[d] as to whether the state or Westport [had] jurisdiction to regulate recreational clamming in this area, it is undisputed that in 1984 Westport asserted such jurisdiction. At that time, pursuant to its local regulations, Westport began to require the purchase of a $10 clamming permit and began enforcing a one peck ([and then] a one-half bushel) daily limit." Id., 420–22.

---

[4] We affirmed the trial court's judgment in favor of the defendants on counts three, four, five and six. See *Frillici* v. *Westport,* supra, 231 Conn. 440.

[5] The plaintiffs appealed to the Appellate Court and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The town's assertion of jurisdiction roughly coincided with the enactment of an amendment to General Statutes § 26-280.[6] "The precursor of § 26-280 is General Statutes (Cum. Sup. 1935) § 1356c, enacted by the legislature in 1935. That statute granted authorization to the Westport selectmen to require a written permit to take shellfish from Saugatuck Shores, and allowed them to charge a fee for the permit. Saugatuck Shores, also known as 'the great marsh,' is an area along the Westport coast that extends to the low water mark. Cockenoe Island lies south, or seaward, of Saugatuck Shores; Cockenoe Flats, the subject of this dispute, is the area that lies between the southern boundary of Saugatuck Shores (the low water mark) and the northern shore of Cockenoe Island. By its terms, § 26-280, and its statutory predecessors, referred only to Westport's jurisdiction over Saugatuck Shores and made no reference to Cock-

---

[6] General Statutes § 26-280 provides: "No person shall take, remove or carry away shellfish of any kind from the shores, beaches and flats at 'Saugatuck Shores', so called, in the town of Westport, between June first and October first in each year, except under a written permit issued by the selectmen of said town or as authorized by the shellfish commission of the town of Westport, provided residents of the towns of Westport, Weston and Wilton may take, remove or carry away shellfish from the shores, beaches and flats between the westerly boundary of Sherwood Island Park and the mouth of the Saugatuck River without obtaining such a permit. Any other person desiring to take shellfish from said shores, beaches and flats shall make application to the police department of Westport on a form similar to that provided in connection with licenses or permits for fishing and such police department shall issue such number of permits and to such applicants as appear suitable and proper, and each permittee or licensee shall pay the sum of one dollar for such permit or license when issued to him and such license or permit, unless revoked for cause, shall continue in effect for the balance of the calendar year in which the same is issued. Any person who takes shellfish from said shores, beaches and flats in violation of the provisions hereof shall be fined not more than twenty-five dollars or imprisoned not more than thirty days or both. The provisions of this section shall not be deemed to extend the jurisdiction of the selectmen or the shellfish commission of the town of Westport to any shores, beaches, or flats not within the jurisdiction of such selectmen or commission on or before October 1, 1983."

enoe Flats. The statute remained essentially unchanged until 1983.

"There apparently was no question or dispute over whether Westport or the state had jurisdiction over Cockenoe Flats until the 1970s. In the late 1960s, Westport acquired title to Cockenoe Island, which previously had been privately owned. Thereafter, Westport attempted to assert jurisdiction over Cockenoe Flats, and an arrest was made in Cockenoe Flats for violation of the Westport shellfish regulations. Although that case was eventually nolled, John Baker, the then chief of the aquaculture division of the state department of agriculture, testified at an evidentiary hearing that the state had jurisdiction over Cockenoe Flats. Shortly thereafter, the Westport town attorney indicated that he also was convinced, in light of his interpretation of the General Statutes and the pronouncements of the state, that the state had jurisdiction over the area. Additionally, the state department of environmental protection and the aquaculture division of the state department of agriculture expressed their belief that the state had jurisdiction over Cockenoe Flats.

"Following these pronouncements, from the mid-1970s to the early 1980s, Westport did not assert jurisdiction over Cockenoe Flats, although it closely regulated clamming at Saugatuck Shores. Westport limited the number of available shellfishing permits for Saugatuck Shores to approximately 300 for Westport residents and 100 for nonresidents. At the same time, boaters could clam at Cockenoe Flats without restriction.

"In 1983, Westport sought legislation in order to allow a newly created Westport shellfish commission to regulate shellfishing at Saugatuck Shores. Until that time, authority over Saugatuck Shores had been vested in the Westport selectmen, rather than a shellfish commission.

House Bill No. 6266 purported to amend § 26-280 so as to authorize the newly created Westport shellfish commission, in addition to the Westport selectmen, to regulate shellfishing at Saugatuck Shores. As the defendants correctly argue[d], the purpose of the bill was to bring § 26-280 into conformity with General Statutes § 26-257a,[7] which had been enacted in 1963, to authorize the creation of a local shellfish commission in each town to regulate the taking of shellfish from waters under town control.

"The proposed bill came under scrutiny by certain members of the local community, including the plain-

[7] General Statutes § 26-257a provides: "(a) Any town, city or borough, acting by its legislative body or its board of selectmen, if a town, or its mayor, if a city, or its warden, if a borough, may establish a shellfish commission or may join with one or more other towns, cities or boroughs, acting by their respective legislative bodies or boards of selectmen or mayors or wardens, as the case may be, in establishing such a commission. The number of members and their term of office shall be determined by the legislative body or board of selectmen or mayor or warden, as the case may be, or, in the case of such joint action, by agreement of the legislative bodies or boards of selectmen or mayors or wardens, as the case may be.

"(b) Such commission shall have charge of all the shellfisheries and shellfish grounds lying in such municipality or municipalities not granted to others and not under the jurisdiction of the Commissioner of Agriculture, including all rivers, inland waters and flats adjacent to all beaches and waters within the limits and marine bounds of the municipality or municipalities. The commission may designate suitable places in the navigable waters within its jurisdiction for planting or cultivating oysters, clams or mussels. The commission may issue licenses for the taking of shellfish therefrom and fix the fees therefor, may designate the quantities of such shellfish to be taken, the sizes of such shellfish and the methods of taking. The commission may prohibit the taking of such shellfish from certain designated areas for periods not in excess of one year. All moneys collected by the commission under the provisions of this section shall be paid to the commission and used by it for the protection and propagation of the shellfish under its control. Any person who violates any regulation issued by the commission pursuant to this section shall be fined not more than fifty dollars or imprisoned not more than thirty days or both.

"(c) The commission shall prepare and periodically update a shellfish management plan. The plan shall be submitted to the Commissioner of Agriculture and any appropriate board of selectmen, mayor or warden for review and comment."

tiffs, who feared that Westport intended a shellfish commission, authorized by the bill, to exert jurisdiction over Cockenoe Flats in addition to Saugatuck Shores. [Fernando] Frillici [the named plaintiff] sent a letter to Senator Eugene Skowronski expressing his concern and the concerns of others regarding the effect of House Bill No. 6266, and urging its defeat lest Westport be permitted to assert jurisdiction over Cockenoe Flats. In response to this letter, Westport sent a letter to Senator Skowronski explaining that although '[c]oncepts regarding expansion of local authority beyond the Saugatuck Shores area were . . . discussed' at a public meeting, 'Westport is not pursuing [greater local jurisdiction] in the proposed legislation being considered at the present time.'

"With this controversy in the background, when House Bill No. 6266 was considered by the Senate, the following amendment to the bill was offered and accepted: 'The provisions of this section shall not be deemed to extend the jurisdiction of the selectmen or the shellfish commission of the town of Westport to any shores, beaches, or flats not within the jurisdiction of such selectmen or commission on or before [October 1, 1983].' Public Acts 1983, No. 83-236." *Frillici* v. *Westport*, supra, 231 Conn. 425–29.

Following passage of this amendment and creation of the commission, the town began requiring that recreational clammers clamming on the Cockenoe Flats purchase a $10 permit and began enforcing a limit on the number of clams removed from Cockenoe Flats. The town, however, ceased enforcement following complaints. Id., 422.

Then, "[i]n 1984, Frank Palmer, who is not a party in this case, brought a declaratory judgment action against the department of agriculture [(department)] and Westport to determine the extent of the state's jurisdiction

over Cockenoe Flats. The court granted the department's motion to strike, holding that Palmer should seek redress by way of the statutory scheme for resolution of shellfish area boundary disputes provided for under General Statutes § 26-195. *Palmer* v. *Dept. of Agriculture*, Superior Court, judicial district of Fairfield, Docket No. 21 83 88 (July 1, 1985).

"Thereafter, Palmer petitioned the commissioner of agriculture [(commissioner)], pursuant to § 26-195, to determine the extent of state jurisdiction over Cockenoe Flats. Following a public hearing, the commissioner determined that Westport had jurisdiction over Cockenoe Flats. Following this determination, a group of interested parties, including some of the plaintiffs in this case, appealed from the commissioner's decision to the Superior Court. That court, *Landau, J.*, concluded that the commissioner had correctly determined that Westport had jurisdiction over Cockenoe Flats, but that the determination had to be vacated because § 26-195 only gives the commissioner authority to settle disputes with respect to shellfish grounds within the exclusive jurisdiction of the state, and the conclusion that Cockenoe Flats was not within the jurisdiction of the state resulted in the case being beyond the scope of the commissioner's authority. *Frillici* v. *Dept. of Agriculture*, Superior Court, judicial district of Fairfield, Docket No. CV86 0230537 S (April 25, 1988). Although the appellants 'won' their appeal, it was a hollow victory, and Westport, in reliance on the Superior Court's basis for its holding—that Westport had jurisdiction over Cockenoe Flats—reasserted jurisdiction over the area." *Frillici* v. *Westport*, supra, 231 Conn. 422 n.5.

Following that Superior Court decision and the defendants' reassertion of jurisdiction over Cockenoe Flats, the plaintiffs instituted this action. Evidence adduced at trial indicated that "in 1983, Westport, the Westport shellfish commission and the Attorney General's office

all believed that Cockenoe Flats was under the exclusive jurisdiction of the state. In 1984, the state department of agriculture also indicated its belief that the state had jurisdiction over Cockenoe Flats by designating it as a state recreation clamming area in official regulations." Id., 435 n.21. The Westport town attorney and the commissioner of aquaculture for the state of Connecticut both testified at trial, however, that those original opinions were based on incomplete research and were incorrect. The trial court concluded that the town had jurisdiction over Cockenoe Flats and rendered judgment for the defendants. The plaintiffs appealed and this court reversed the trial court's judgment in part, concluding that the state had jurisdiction over Cockenoe Flats. Id., 418.

On remand, the trial court was directed by this court to consider whether: (1) the plaintiffs were entitled to injunctive relief;[8] (2) whether the plaintiffs were entitled to damages for alleged violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.;[9] and (3) whether the actions of the defendants in exercising jurisdiction over Cockenoe Flats constituted wilful and wanton misconduct. Id., 440. No additional evidence was adduced at the second trial. The second trial court, *Tierney, J.,* had before it the transcripts from the first trial and those exhibits that could be recreated.[10] Additionally, the trial court took judicial

---

[8] The plaintiffs' amended complaint requested various forms of injunctive relief. The trial court denied all of the plaintiffs' requests. The only form of injunctive relief being pursued by the plaintiffs in this appeal is an injunction ordering the defendants to refund permit fees collected in the course of exercising jurisdiction over Cockenoe Flats. Accordingly, the propriety of the trial court's denial of the plaintiffs' other requests for injunctive relief is not before this court.

[9] The propriety of the trial court's judgment on that count is not before this court.

[10] The exhibits that were entered into evidence at the first trial had been lost.

notice of the entire file in *Palmer* v. *Dept. of Agriculture,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV2350507S. Finally, the parties made the following factual stipulations relevant to this appeal: (1) the trial court would consider the transcripts from the thirteen days of the original trial in lieu of testimony; (2) all exhibits offered to the trial court were exhibits previously submitted in the original trial and any missing exhibits were not relevant for the second trial court's consideration; (4) the trial court was free to consider those exhibits marked as full exhibits in the original trial; (5) no further exhibits, documents or witnesses were offered by either party, except as to the bifurcated issue of the attorney's fees, if necessary; (6) there were no other steps reasonably necessary to complete the proceedings; and (7) the trial court would render its decision on the basis of its own findings of fact and conclusions of law. After consideration of all of the evidence, the trial court rendered judgment for the defendants on the three remaining counts of the plaintiffs' amended complaint.

The plaintiffs claim that the trial court improperly: (1) concluded that the plaintiffs failed to sustain their burden of proof on their claim that the defendants' conduct was wilful and wanton misconduct; (2) denied the plaintiffs' request for an injunction compelling the defendants to refund permit money collected by the defendants in the course of exercising jurisdiction over Cockenoe Flats; (3) failed to consider and award general damages to the plaintiffs under count one of the amended complaint; and (4) awarded costs to the defendants. We disagree.

I

The plaintiffs first claim that the trial court improperly concluded that they failed to sustain their burden

of proof on the issue of whether the defendants engaged in wilful and wanton misconduct. We disagree.

We begin by setting forth the relevant standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 216–17, 796 A.2d 1141 (2002). Wanton misconduct is reckless misconduct. *Menzie* v. *Kalmonowitz*, 107 Conn. 197, 199, 139 A. 698 (1928). "Whether [the] defendant's conduct constituted heedless and reckless disregard of the plaintiffs' rights [is] a question of fact"; (internal quotation marks omitted) *Brock* v. *Waldron*, 127 Conn. 79, 83, 14 A.2d 713 (1940); subject to the clearly erroneous standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

"Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . .

"While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." (Internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 342–43, 813 A.2d 1003 (2003).

The plaintiffs assert a litany of claims of wilful and wanton misconduct. The crux of these claims is that, because at various times agents of the town and the commission, the state's attorney general, the United States Congress and the Connecticut commissioner of aquaculture all stated that the state had jurisdiction over Cockenoe Flats, the defendants' exercise of jurisdiction was wilful and wanton. As the trial court noted, however, the record also reveals that at various times, various agencies, individuals and courts concluded that *the town* had jurisdiction over Cockenoe Flats. Accordingly, it is. clear that reasonable minds could and did differ on the question of which entity had jurisdiction over Cockenoe Flats. We conclude, therefore, that there is sufficient evidence in the record to support the trial court's finding that the defendants' exercise of jurisdiction amid this confusion did not amount to wilful and wanton misconduct.

The plaintiffs further claim that the defendants' failure to avail themselves of the process for settling jurisdictional disputes outlined in General Statutes § 26-

192[11] amounts to wilful and wanton misconduct. We are not persuaded. Contrary to the plaintiffs' assertion, the record reveals that the defendants did not engage in "self-help." Rather, the commission was in direct contact with the commissioner of aquaculture in an attempt to determine the jurisdictional question. The dispute ultimately was settled, with both parties agreeing, albeit erroneously, that the town had jurisdiction. The defendants chose to forgo litigation in favor of direct discussion with the state. Choosing to forgo litigation in favor of an alternative means of settling the dispute, particularly when the matter was already being litigated, does not evidence a reckless disregard of the plaintiffs' rights or highly unreasonable conduct. Accordingly, we conclude that the trial court's finding that the defendants' conduct was not wilful and wanton misconduct is not clearly erroneous.

II

The plaintiffs next claim that the trial court improperly refused to order a refund of permit fees collected by the defendants in the course of asserting jurisdiction over Cockenoe Flats. The defendants maintain that none of the plaintiffs ever paid a permit fee and, accord-

[11] General Statutes § 26-192 provides: "The state shall exercise jurisdiction and control over all shellfisheries which are located in that area of the state described in section 3294 of the general statutes, revision of 1918; and the Commissioner of Agriculture shall prepare a map of such area and shall keep the same on file for public inspection in his office. All shellfisheries not within said area, except as provided in section 26-257, shall be within the jurisdiction and control of the towns in which they are located. If a difference arises between any town and the commissioner as to the boundary line between such town and said area, such town, by its selectmen, may bring its petition to the superior court for the judicial district within which such town is situated, to determine such boundary line, and said court, upon a reasonable notice to the parties, shall hear such petition and appoint a committee to ascertain the facts in such case and report the same to said court, and said court shall thereupon make such order as may be proper in the premises; the landmarks referred to herein and the locations thereof being as the same existed and were known on April 26, 1882."

ingly, that the plaintiffs do not have standing to claim a refund of permit fees for nonparties. We conclude that the plaintiffs lack standing to claim a refund of permit fees for nonparties.

As a preliminary matter, we address the appropriate standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the

controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485–86, 815 A.2d 1188 (2003).

In the present case, the plaintiffs seek an injunction to compel the defendants to refund permit fees collected by the defendants in the course of exercising jurisdiction over Cockenoe Flats. None of the plaintiffs, however, paid permit fees to the defendants. Rather, the plaintiffs seek to compel the defendants to refund money to nonparties who purchased permits. It is axiomatic that a party does not have standing to raise the rights of another. See *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 234–35, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). Accordingly, we conclude that the plaintiffs did not have standing to claim a refund of permit fees for nonparties and that the trial court did not have jurisdiction to enter an injunction compelling such payment.

### III

The plaintiffs next claim that the trial court improperly failed to consider and award general damages to them under count one of their complaint. The defendants maintain that because the plaintiffs have alleged irreparable harm and that they have no adequate remedy at law in the first count, any claim for damages under that count is improper. We conclude that the trial court did not improperly fail to consider and award general damages under count one of the plaintiffs' amended complaint.

We begin by noting, contrary to the defendants' asser-
tion, that "[i]n an action for injunction the court may,
in addition to or in lieu of injunction, give . . . (a) a
judgment for damages . . . ." 4 Restatement (Second),
Torts § 951 (1979); see also *Platt Bros. & Co.* v. *Water-
bury*, 72 Conn. 531, 554, 45 A. 154 (1900) (affirming
award of damages in addition to injunction); 42 Am.
Jur. 2d, Injunctions § 272 (2000) ("[i]n the exercise of
its power to retain the cause to afford complete relief
to the parties, a court of equity may award injunctive
relief and damages as an adjunct to its equity juris-
diction").[12]

"We recognize that [t]he trial court has broad discre-
tion in determining damages. . . . The determination
of damages involves a question of fact that will not be
overturned unless it is clearly erroneous." (Citations
omitted; internal quotation marks omitted.) *Beverly
Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff &
Kotkin*, 247 Conn. 48, 68, 717 A.2d 724 (1998). The
standard of review pertaining to findings of fact is set
forth in part I of this opinion.

The plaintiffs claim that the trial court improperly
failed to consider an award of general damages under
count one of the amended complaint. The plaintiffs
maintain that they are "entitled to an award of fair,

[12] We also note that our remand in *Frillici* v. *Westport*, supra, 231 Conn.
440, appears to limit any claim under count one to "injunctive relief" while
allowing for damages under counts two and seven. This would appear to
preclude the trial court from considering general damages under the first
count of the complaint. See *Higgins* v. *Karp*, 243 Conn. 495, 502, 706 A.2d
1 (1998) ("Well established principles govern further proceedings after a
remand by this court. In carrying out a mandate of this court, the trial court
is limited to the specific direction of the mandate as interpreted in light
of the opinion." [Internal quotation marks omitted.]) We have concluded,
however, that, in considering a claim for injunctive relief, the trial court
has the discretion to consider and award damages. The trial court thus was
able to consider damages under count one and still "comply strictly with
the mandate of the appellate court according to its true intent and meaning."
(Internal quotation marks omitted.) Id.

just and reasonable compensation for their loss and diminution of their avocations, including the interference with and loss of use of their recreational clamming grounds as well as for the extensive time and effort expended to successfully defend state jurisdiction and to prosecute this case since 1984." We are not persuaded.

In order to recover general damages, the plaintiffs must prove actual damage. "It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty." (Citations omitted.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 476–77, 590 A.2d 431 (1991). The plaintiffs, however, did not allege or prove any actual damage, but instead merely asserted that they should be compensated for their "intangible injury and loss." In the absence of any proof of actual damage, "[w]e conclude in this case, as we did in *Loew's Enterprises, Inc.* v. *International Alliance of T.S.E.*, 127 Conn. 415, 421–22, 17 A.2d 525 (1941), that [t]he [plaintiffs were] in effect seeking as [their] sole remedy an injunction. There is no basis in [the plaintiffs'] claims or in the facts proven which would justify a remand of the case for a retrial of issues [involved] in a claim for damages." (Internal quotation marks omitted.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, supra, 478. Accordingly, we conclude that the trial court did not improperly fail to consider the plaintiffs' claim for or award them general damages under count one of the amended complaint.

## IV

Finally, the plaintiffs claim that the trial court improperly awarded costs to the defendants because, in light

of this court's decision in *Frillici* v. *Westport*, supra, 231 Conn. 418, the plaintiffs were the prevailing party. We disagree.

"It is elementary that, whether fees and costs are a matter of right or discretion, they ordinarily are awarded to the party that prevails in the case and, until there is a prevailing party, they do not arise." *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 18, 730 A.2d 1128 (1999); see also General Statutes § 52-257 (providing that prevailing party receives certain sums in civil actions). The plaintiffs point us to the following definition of prevailing party: "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. . . . This may be the party prevailing in interest, and not necessarily the prevailing person. To be such does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit . . . the party who has made a claim against the other, has successfully maintained it." (Citation omitted.) Black's Law Dictionary (6th Ed. 1990).

In *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 302, 780 A.2d 916 (2001), this court determined that a party in whose favor judgment is rendered pursuant to the offer of judgment statute; General Statutes § 52-194; is the prevailing party as that term is used in the statute governing the award of attorney's fees in a product liability action under General Statutes § 52-240a. We stated that "it is difficult to see why one who has secured a judgment of the court in his favor should not be viewed as a party who has prevailed in the action in question, irrespective of the route by which he received that judgment. Indeed, 'prevailing party' has

been defined as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . . Also termed "successful party." ' Black's Law Dictionary (7th Ed. 1999)." *Wallerstein* v. *Stew Leonard's Dairy*, supra, 303–304.

The plaintiffs maintain that, because they successfully claimed that the state had jurisdiction over Cockenoe Flats, they were the prevailing party. The plaintiffs initiated this action, however, with a seven count complaint against the defendants, seeking various forms of injunctive relief and damages on the theory that the defendants were engaging in wrongful conduct in exercising jurisdiction over Cockenoe Flats. The claim underlying the plaintiffs' claims for injunctive relief and damages was that the state had jurisdiction over Cockenoe Flats. Although the plaintiffs ultimately established that predicate issue, they did not succeed in obtaining any form of relief. At the first trial, the trial court rendered judgment for the defendants on all counts. On appeal, this court affirmed the trial court's judgment on counts three, four, five and six. On remand, the second trial court rendered judgment for the defendants on the remaining counts. The defendants have prevailed, therefore, on all counts of the amended complaint. The plaintiffs' claim that, because they were correct in their assertion that the state had jurisdiction they are now the prevailing party, when judgment on all counts was rendered for the defendants, is without merit. Accordingly, we conclude that the trial court properly awarded costs to the defendants.

The judgment is affirmed.

In this opinion the other justices concurred.