## EDWARD A. BROWN *v.* GARY PISZCZEK, EXECUTOR (ESTATE OF EDWARD A. PISZCZEK) (AC 25985)

Bishop, McLachlan and Gruendel, Js.

Submitted on briefs December 2, 2005—officially released April 4, 2006

*Martin M. Rutchik* filed a brief for the appellant (defendant).

*William C. Kollman II* filed a brief for the appellee (plaintiff).

McLACHLAN, J. The defendant, Gary Piszczek, executor of the estate of Edward A. Piszczek, appeals from the judgment of the trial court finding the defendant liable to the plaintiff, Edward A. Brown, in the amount of $58,240. On appeal, the defendant claims that the court improperly found that there was sufficient evidence to establish that the plaintiff performed work for the decedent. We disagree and affirm the judgment of the trial court.

The plaintiff claimed that he worked on the farm owned by the defendant's decedent, Edward A. Piszczek, for a period of years from 1988 until the decedent's death in 2003.[1] He claims that he worked on the decedent's farm because the decedent promised to leave him part of the farm or other assets to compensate him for his services. The decedent required the plaintiff's services because of his age and various infirmities. Upon his death, the decedent left the plaintiff $2000 in his will. The plaintiff asserted that his services were worth $899,706.50. He brought this action to recover for breach of contract, breach of constructive trust and unjust enrichment. During a trial to the court, each party presented several witnesses.

The plaintiff offered the testimony of his girlfriend, Lucy Baker. She testified that she has known the plaintiff since December 9, 2002. Baker spent time with the plaintiff and the decedent and heard the decedent promise the plaintiff that he would give him land in return for his services on the farm. She testified that she knew that the plaintiff had worked for the decedent from 1987 to 1991 until the plaintiff went to jail for eighteen months. She also was aware that the plaintiff worked for the decedent for one or two years when he was released from jail.

---

[1] The plaintiff is the decedent's grandnephew.

The plaintiff also testified. He stated that in early 1988, the decedent promised him that he would give him land if he stayed with him and worked on the farm. The plaintiff began living and working on the farm on a full-time basis in 1988. He testified that he worked from 5 a.m. to 6 p.m., milking cows, feeding animals, shoveling stables, cutting wood, mowing grass and shoveling snow. He worked from the spring of 1988 until April 1, 1991, when he was sentenced to eighteen months in jail. The plaintiff was released in November, 1992, and returned to the farm.[2] He testified that he worked four days a week from September, 1994, until 2003 when the decedent died. The plaintiff filed claims for his services totaling $899,706. He listed the work that he performed for the decedent and indicated that the charge was $15 per hour.

The plaintiff also called his father, Edward A. Brown, to testify. He testified that he saw the plaintiff working on the farm. The father also testified that he heard the decedent tell the plaintiff multiple times that he was going to give the plaintiff some land in return for the work he was performing.

The defendant also presented several witnesses. He called Dennis Jorz, the decedent's cousin. He testified that when he helped the decedent on the farm from 1988 to 1990, he saw the plaintiff helping out a few times. He did not recall the plaintiff living on the farm. The defendant also called John Jorz, the decedent's nephew and the plaintiff's cousin. He testified that he cut wood for the decedent from 1989 until 1992. He saw the plaintiff living on the farm from 1989 to 1991, but he was unsure of what the plaintiff did on the farm. He testified that the plaintiff did not work regularly and acknowledged that he did not like the plaintiff.

---

[2] The cows were sold on April 1, 1991. Therefore, when the plaintiff returned, he performed other farm work, but no longer milked cows.

The defendant called the decedent's sister, Angela Jorz. She lives one half of a mile from the decedent's farm, and the plaintiff is her grandnephew. She testified that the plaintiff moved in with the decedent in 1989. She did see the plaintiff doing some work for the decedent, but she did not think it was very much. She knew that he was supposed to be helping the decedent on the farm because he was living there. She believed that he may have milked the cows. Jorz testified that she did not care much for the plaintiff.

The defendant testified as well. The decedent was the brother of the defendant's father and left the defendant his entire estate except the $2000 that was left to the plaintiff. The defendant worked at his father's farm, which was one mile from the decedent's farm. He testified that the plaintiff lived with the decedent and possibly helped with work on the farm. The defendant testified, however, that he and the decedent did all the work. The defendant stated that he did all the farming from 1980 until 2004. He testified that the plaintiff did not perform any work to the extent that he claimed he did. The defendant also testified that the average pay for a farmworker in 1990 was approximately $5 per hour and that at the time of trial it was about $8.50 per hour. The final witness for the defendant was Harry Seligman, a cattle dealer and farmer. He purchased all of the decedent's cows on April 1, 1991. He testified that he saw the plaintiff at the farm on occasion, but never saw him do any work besides cut wood.

The court denied the plaintiff's claim for an interest in real property because the decedent's promise was not in writing and therefore was violative of the statute of frauds. The court did, however, find merit in the plaintiff's unjust enrichment claim and rendered judgment in favor of the plaintiff in the amount of $58,240.[3] This appeal followed.

---

[3] After a review of the conflicting testimony and conflicting evidence, the court found that the plaintiff worked on the farm for an average of four

We begin by setting forth our standard of review. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . ." (Citations omitted; internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003).

The defendant claims that the court improperly found that the weight of the evidence demonstrated that the plaintiff performed work for the decedent. We disagree. Although it is clear that the testimony at trial was conflicting regarding the amount of time the plaintiff worked on the farm, the court's conclusion was based on elicited evidence. The court considered the testimony of all of the witnesses, including the plaintiff's, and determined that the plaintiff performed services on the farm. The court also considered testimony of the witnesses as to the hourly rate that was appropriate for a farmworker during that time and accordingly rendered a mathematical calculation leading to the judgment. Although the defendant maintains that there was virtually no evidence to support the judgment, there was, in fact, sufficient evidence elicited through testimony at trial to support the court's ruling. The findings of the court were not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

years for approximately forty hours per week. The court also found that the average rate of pay for a farmhand during that time was $7 per hour.