JAMES M. COADY ET AL. *v.* GREGORY
MARTIN ET AL.
(AC 20738)

Spear, Mihalakos and Peters, Js.

Argued May 29—officially released September 25, 2001

*Charles D. Houlihan, Jr.,* for the appellants-appellees (plaintiffs).

*Richard P. Weinstein,* with whom, on the brief, was *Nathan A. Schatz,* for the appellees-appellants (named defendant et al.).

*Opinion*

PETERS, J. This case primarily concerns the enforceability of a written agreement between two entrepreneurs who decided to use the concept of "Ebbets Field" as a trademark and logo[1] that might serve as a marketing device for a variety of projects, principally in the greater Hartford region. Whether such an agreement is enforceable depends upon whether its terms demonstrated an agreement, in law and in fact, on all essential issues in dispute. The trial court held that the agreement did not do so. We agree.

The plaintiffs, James Coady and Joanne Coady, filed a revised complaint charging the defendants, Gregory G. Martin, Thomas Heaney and Michael O'Keefe, with breach of fiduciary duty, breach of contract, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and fraud.[2] The defendants responded with a denial, special defenses and a counterclaim. The court rendered a judgment in favor of the defendants. It concluded that the defendant Martin had no fiduciary duty to the plaintiff, James Coady, and that the agreement between the parties was unenforceable for lack of an essential term and for lack of consideration. It therefore held against the plaintiffs on their complaint and in favor of the defendant Martin's request for injunctive relief to bar the plaintiffs from

---

[1] For many years, Ebbets Field was the home ballpark for the Brooklyn Dodgers. The Dodgers were members of the National Baseball League.

[2] Although only James Coady and Gregory Martin were parties originally, the court permitted the others to intervene or to be cited in as indispensable parties.

using the name "Ebbets Field." The plaintiffs have appealed.

## FACTUAL AND PROCEDURAL HISTORY

The relevant factual background for this litigation begins one year or more before the disputed agreement was signed in 1996 by the plaintiff James Coady and the defendant Martin. It is undisputed that, during the preagreement period, there were discussions among all the parties, with the exception of the plaintiff Joanne Coady, about possible development projects.[3] Also, the defendant Martin filed the appropriate documentation with the secretary of the state to establish that he had formed a limited liability corporation under the name of Ebbets Field Ventures, LLC (company). Although many of the issues raised by the plaintiffs concerned rights in the company, the company was not named as a defendant.

The court found that, in 1996, the plaintiff James Coady, the defendant Martin and the company entered into a written membership and subscription agreement. Under that agreement, the plaintiff James Coady received a 50 percent interest in the company from the defendant Martin. The agreement acknowledged that, at "a later date," the defendants O'Keefe and Heaney would each be issued a "Membership Interest [in the company] in a lesser proportion." Prior to the agreement, the parties were unable to settle the precise percentage of the equity in the company to which these defendants were entitled because of their prior performance. Each of them had participated in discussions of the uses to which the Ebbets Field trademark and logo might be put.

The court made findings about the relationship between the company and the plaintiffs. Although the

---

[3] Among the projects that were contemplated by the parties was a proposal to bring a minor league baseball team to Hartford.

plaintiff Joanne Coady sent $15,700 to the Coady Capital Account at the company, she was never considered to be a part of the group that might invest in the company. She was neither a third party beneficiary nor an assignee of whatever interest the plaintiff James Coady might have had. Although the operating agreement filed with the secretary of the state stated methods for assigning the rights of any member in the company, "[t]hese requirements were never met by anyone."

The plaintiff James Coady's interest in the company similarly was not established. He "never owned any part of the [company] and he never lent it any money." He never promised to put anything into the company, and never did so. Although the plaintiffs' original complaint had been filed in August, 1997, "[a]s late as August, 1999, he denied that he owned any interest in the [company]." The court implicitly found the testimony of the plaintiff James Coady to be unpersuasive.[4] Indeed, the trial court expressed its doubt about the reliability of the plaintiff James Coady's testimony.[5]

In light of these findings, the court concluded that the controversy between the parties was primarily based on the viability of the 1996 membership agreement between the plaintiff James Coady and the defendant Martin. The court held that this agreement was defective because of the unresolved dispute about "what the percentage of the ownership would be among the four

---

[4] Even though not specifically disputed, the testimony was not binding on the court. *Gould* v. *Hall*, 64 Conn. App. 45, 52, 779 A.2d 208 (2001).

[5] The court observed that the plaintiff James Coady testified at trial that he was a resident of Florida, although the complaint contained no reference to Florida. He was not always candid with the defendant Martin about his financial situation, even though by 1995, "he had no net worth." When the present controversy arose, he threatened to "tank the company" and tried unsuccessfully to oust the defendant Martin from the company. He notified the defendant Martin's employer of the pending action and threatened to notify a major league baseball official unless the defendant Martin agreed to resolve their differences in little more than one week's time.

parties mentioned in the [a]greement." Without resolving that issue, the parties had not come to "a meeting of the minds." In addition, the court held that the agreement was unenforceable because of the absence of consideration to support it.

In light of its findings, the court did not address the plaintiffs' claims of a CUTPA violation or of fraud. Although the court initially did not rule on the plaintiffs' claim that the defendant Martin owed them a fiduciary duty that had not been fulfilled, after reargument, the court expressly found the absence of any fiduciary duty to the plaintiffs.[6] Accordingly, the court rendered judgment in favor of the defendants on the plaintiffs' complaint and enjoined the plaintiffs, in perpetuity, from using the Ebbets Field trademark and logo or near equivalents thereof.

The plaintiffs' appeal from the judgment of the court raises four separate issues. They argue that the judgment should be set aside because the court (1) improperly failed to address their claim for relief for breach of the fiduciary duty that the defendant Martin owed to the plaintiff James Coady, (2) improperly held the membership agreement between the plaintiff James Coady and the defendant Martin to be unenforceable, (3) abused its discretion in failing to grant their motion for sanctions because of the late disclosure of a transcript of a tape recording and (4) improperly failed to enforce an offer for restitution that was contained in pleadings filed by the defendant Martin.[7]

---

[6] Although the court initially held the defendant Martin accountable to the plaintiff Joanne Coady for the $15,700 that she had paid to the company, it subsequently granted the defendant Martin's motion for articulation and modified its decision to grant any relief to her because the company was not a party to this litigation. Although this ruling was made more than four months after the judgment had been rendered, no one has raised any procedural objection to the validity of the ruling. See *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999).

[7] The defendant Michael O'Keefe has not participated in this appeal.

Our standard of review of the plaintiffs' claims is well established. The court's findings of fact are reversible only if they are clearly erroneous. *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997). The court's conclusions of law are reversible only if they are legally and logically incorrect in light of the facts found. Id. The court's discretionary rulings are reversible only if they manifest an abuse of the court's discretion. *State* v. *Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993). Applying these principles to the circumstances of this case, we are not persuaded by any of the plaintiffs' claims of impropriety.

## FIDUCIARY DUTY

The plaintiffs claim that the judgment should be set aside because the court allegedly gave short shrift to their argument that the defendant Martin owed them a fiduciary duty regardless of the enforceability of the written agreement to which the plaintiff James Coady and the defendant Martin had subscribed in 1996. This argument is untenable.

It is inaccurate for the plaintiffs to assert that the judge did not rule on this count of their complaint. The memorandum of decision entitled "Re articulation, sanctions and reargument," states categorically that "[t]he court cannot find that the defendants or any of them had any fiduciary obligation to [the] plaintiffs." Contrary to the view espoused by the plaintiffs, the court's finding about the nonexistence of a fiduciary obligation obviated the need to discuss a possible breach of that obligation. Although the plaintiffs asked the court to articulate its holding on other issues, they failed to ask for clarification on the issue of fiduciary duty.

It is inconsistent for the plaintiffs, on appeal, to claim a breach of fiduciary duty independently of the written agreement when, at trial, they took a diametrically

opposite position. Paragraph nineteen of their complaint states: "Martin has breached his obligation to the Company and [to the] Plaintiff to operate the business of the Company *in accordance with the fiduciary duties he assumed under the Amended Operating Agreement.*" (Emphasis added.) After the court had announced its decision at the end of the trial, the plaintiffs filed a motion for reargument in which they again characterized the alleged fiduciary relationship as having been *"based upon the written agreement."* (Emphasis added.)

Even if we were nonetheless to address the plaintiffs' argument on its merits, the plaintiffs could not succeed. The plaintiffs' appellate brief alleges that the plaintiff James Coady and the defendant Martin were engaged in a joint venture that imposed fiduciary obligations upon the defendant Martin. We disagree.

The plaintiffs may well be right about the law of joint ventures; *Doe* v. *Yale University*, 252 Conn. 641, 672–73, 748 A.2d 834 (2000); but they fail to point out any factual finding that would support the joint venture theory in this case. The court was not asked to find, and did not find, the existence of a joint venture. Although the plaintiffs have cited evidence that would support their present argument, that does not suffice. This court has no authority to find facts to supplement the record at trial. *Lupien* v. *Lupien*, 192 Conn. 443, 445, 472 A.2d 18 (1984); C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.10 (a), p. 308.

For the procedural and substantive reasons previously discussed, the trial court properly rejected the plaintiffs' claim of breach of fiduciary duty. Its factual findings were not clearly erroneous and its legal conclusions were sound.

## THE MEMBERSHIP AGREEMENT

The plaintiffs claim that the court improperly concluded that the membership agreement was unenforce-

able for lack of an essential term.[8] Focusing on the language of the agreement and the oral expressions of the parties, the court held that the absence of a provision delineating the percentage of ownership of all of the parties in the company rendered the agreement fatally incomplete. We agree with the court.

"[N]umerous Connecticut cases require definite agreement on the essential terms of an enforceable agreement. . . . [A]n agreement is too indefinite to be enforceable until the parties have decided the amount of a contemplated loan . . . or the configuration of a subordination agreement." (Citation omitted.) *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 845, 779 A.2d 174 (2001). Whether a term is essential turns "on the particular circumstances of each case." Id.

The particular circumstances of this case include the court's finding that, when the plaintiff James Coady and the defendant Martin were negotiating the terms of the membership agreement, they had considered, but had been unable to agree on, the distribution of rights in the company. They understood and agreed, however, that the defendants Heaney and O'Keefe were entitled to participate in the company. The agreement incorporates that understanding in its text.[9] It says that "a

---

[8] The court also held that the agreement was unenforceable for lack of consideration. That holding presumably was based upon its finding that the plaintiff James Coady had provided neither moneys nor services to the company and had not promised to do so. The court did not, however, allude to the statement of consideration contained in the agreement itself. Because we uphold the court's conclusion that the agreement is unenforceable for lack of an essential term, we need not inquire further into this issue. Correlatively, we need not address the issues raised by the plaintiffs in points four and five of their appellate brief.

[9] "For good and valuable consideration duly received and acknowledged, it is hereby agreed . . . (4) Coady and Martin acknowledge that a Membership Interest in a lesser proportion will have to be issued to Michael O'Keefe and Tom Heaney at a later date . . . ."

Membership Interest in a lesser proportion will *have
to be issued* to Michael O'Keefe and Tom Heaney *at a
later date* . . . ." (Emphasis added.)

The plaintiffs argue that, as a matter of law, the dispositive language is "at a later date." In their view, an acknowledgement of problems to be resolved in the future does not undermine the present enforceability of the agreement as it stands. The language about the rights of the defendants O'Keefe and Heaney is, in their words, "precatory."[10] They maintain that the agreement is enforceable because it unambiguously addresses the essential terms of the rights of the persons who were its signatories. According to the plaintiffs, these terms of the agreement are sufficiently certain to provide "a basis for determining the existence of a breach and for giving an appropriate remedy." 1 Restatement (Second), Contracts § 33 (2), p. 92 (1981).

The defendants, to the contrary, focus on the language "will have to be issued" as indicative of the parties' failure to resolve a present controversy about the structure of the company. They contend that this language states a present commitment that cannot be overlooked even though its implementation is postponed to "a later date."

Although the terms of the agreement could have been clearer, we agree with the court that the defendants' position is the more plausible one. Having acknowledged the present participatory rights of the defendants O'Keefe and Heaney, the agreement could not and did not postpone the vesting of their rights to a future time.

---

[10] The plaintiffs also maintain that the agreement contains all the essential terms because it confers no enforceable rights on the defendants O'Keefe and Heaney. Whether these defendants may be third party beneficiaries of the agreement between the plaintiff James Coady and the defendant Martin is an issue that should have been raised at trial. The plaintiffs do not indicate that they did so. The court did not rule thereon in any of its memoranda of decision. It is too late to raise this issue now.

True, their participation rights were then not enforceable because of the lack of agreement about what percentage their interests in the company would be. Nonetheless, their rights cast an unmistakable shadow on the enforceability of an agreement that purported to distribute *all* of the interests in the company to the plaintiff James Coady and the defendant Martin. A comparable case is *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 537–38, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999), in which a failure to agree on the terms of a subordination agreement made unenforceable an otherwise comprehensive and unambiguous agreement about the terms of a mortgage. See also 1 S. Williston, Contracts (4th Ed. Lord 1990) § 4:28, pp. 602–608. These authorities persuade us that the membership agreement is unenforceable because it did not delineate the extent of the interests of the defendants O'Keefe and Heaney and therefore lacked an essential term.[11]

## SANCTIONS

The plaintiffs claim that the court abused its discretion in declining to sanction the defendant Martin for

[11] The plaintiffs also maintain that the court, apart from its construction of the terms of the agreement, made a clearly erroneous finding of fact that there had been no meeting of the minds among the plaintiff James Coady, the defendant Martin and the company. This argument is untenable with respect to the company because it was not a party to the litigation and the court made no finding with respect to its mindset. It is untenable with respect to Martin because it relies on evidence presented at trial rather than on findings made by the court. Several of the court's findings expressly contradict the plaintiffs' assertions about the significance of the contributions that the plaintiff James Coady allegedly had made to the company. As one example, the plaintiffs allege in their brief that James Coady provided more financing than the others and, through his wife, would continue to do so. The court found, however, that when the plaintiff Joanne Coady provided the funding, she was acting for herself and not as the assignee of the plaintiff James Coady. It further found that, although the defendant Martin had put into the bargain his Ebbets Field trademark rights, "James [Coady] did not promise to put in anything and put in nothing." In short, the plaintiffs have not made a persuasive case for their argument that the court's factual finding was clearly erroneous.

his late disclosure of a transcript of a tape recording. The court addressed this claim in its memorandum of decision responding to the plaintiffs' motion for articulation.

The court's articulation stated that the plaintiffs' "motion was filed after the conclusion of trial, and it asserts that [the] defendant Martin failed to disclose the existence of a tape recording of a conversation by and between present defendant Heaney and [the] plaintiff [James Coady]." Although this plaintiff saw a transcript of the recording on August 31, 1999, he did not move for sanctions until October 14, 1999. "He requested no delay in trial nor did he offer any evidence of surprise or unfairness in regard to the timing of the disclosure." The court went on to conclude, with respect to the issue of sanctions, that it could not "find either that [the] defendants did deliberately withhold any discoverable material from [the] plaintiffs, that their admission into evidence was of the slightest importance to the proof of the action or its defense or that plaintiff was in any way injured by that admission."

The plaintiffs acknowledge that they have an uphill battle to reverse the denial of their motion for sanctions. Their motion for sanctions can be overturned on appeal only if we are persuaded that the court abused its discretion.[12] *Berry* v. *Loiseau,* 223 Conn. 786, 801, 614 A.2d 414 (1992).

The plaintiffs make the following points. They allege that (1) the transcript should have been turned over in response to their requests for production addressed to the defendant Martin, (2) the defendant Martin had access to the tape and the transcript even though the

---

[12] Our standard of review would be different if the defendant Martin was appealing from an order of the trial court imposing sanctions. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

tape was owned by the defendant Heaney, (3) the defendant Martin had a copy of the transcript well before trial and (4) the transcript shows that the defendants Martin and Heaney did not ask questions to which the plaintiff James Coady could have replied affirmatively.

On the basis of these allegations, they claim that each of the court's reasons for denial of their sanctions motion was unfounded. The failure to disclose the tape or the transcript could not have been anything other than deliberate because the defendant Martin never presented factual support for the court's contrary conclusion. The "secret evidence" was significant support for the court's determination that the plaintiff James Coady had not fully disclosed his financial situation to the defendant Martin and that he subsequently used improper means to broadcast his dismay after his relationship with them had come to an end.

Whatever their intrinsic validity might be, the plaintiffs' arguments are unpersuasive because they read as if they never had access to the transcript at any relevant time during the trial. The court's finding to the contrary is virtually unchallenged on appeal. Indeed, at trial, the plaintiffs did not make a sufficient evidentiary showing to dispute the court's further factual finding that belated access to the transcript caused them no injury.

In the absence of a showing of prejudice, we conclude that the court did not abuse its discretion in denying the plaintiffs' motion for sanctions. Even if the defendant Martin's nondisclosure was wilful, the court was not required to impose sanctions. See *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 164, 645 A.2d 505 (1994) (wilful failure to appear at deposition); see also *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 39–40, 404 A.2d 889 (1978) (wilful failure to comply with discovery orders).

## RESTITUTION

The plaintiffs' final claim is that, in the court's final memorandum of decision, the court improperly failed to order restitution from the defendants to the plaintiff Joanne Coady for the $15,700 that she sent to the company. They do not challenge the validity of the court's holding that the company, which was not a defendant, was the entity that was legally obligated to settle this account. They argue instead that the defendant Martin had assumed that obligation because, in his sixth special defense to the plaintiffs' complaint, he had "offered to refund to the plaintiff any monies invested in said company, but the plaintiff has failed and neglected to accept same and, hence, to mitigate his damages."

This claim need not long detain us. The plaintiffs do not cite any authority to support their alleged entitlement to relief. They do not allege that they ever accepted the refund offer. Under these circumstances, we conclude that the court properly denied the plaintiffs' claim for restitution.

The judgment is affirmed.

In this opinion the other judges concurred.