ELECTRIC CABLE COMPOUNDS, INC. *v.* TOWN OF SEYMOUR
(AC 26722)

Gruendel, Harper and Foti, Js.

---

Argued February 8—officially released May 23, 2006

*John W. Hogan, Jr.*, for the appellants (proposed intervenors Montowese Industrial Park, Inc., et al.).

*Bradford S. Babbitt*, with whom was *Andrea Donovan Napp*, for the appellee (plaintiff).

*Opinion*

HARPER, J. This is an appeal from the trial court's denial of the motion filed by Montowese Industrial Park, Inc. (Montowese), and Seymour Beacon Falls, LLC (Seymour Beacon Falls), to intervene in a declaratory judgment action brought by the plaintiff, Electric Cable Compounds, Inc., against the defendant, the town of Seymour. The question to be resolved in the declaratory judgment action is whether the plaintiff is entitled to $247,500 that is being held in escrow by the defendant as a result of an agreement entered into by the plaintiff and the defendant in 1994. Montowese and Seymour Beacon Falls claim that they have a right to intervene pursuant to General Statutes § 52-29 (a) and Practice Book § 17-56 (b), or a permissive right to intervene,[1] and that the court improperly denied their motion to admit new parties. We reverse the trial court's denial of the motion to intervene and remand the case for further evidentiary proceedings.

The following facts and procedural history are undisputed for purposes of this appeal. Since 1988, the plaintiff has operated a business in Seymour on property originally owned by the Seymour Specialty Wire Company (Seymour Specialty Wire). In 1989, the plaintiff entered into a five year lease with Seymour Specialty Wire, which also occupied part of the premises, for $5500 per month. During the term of the lease, Seymour Specialty Wire ceased conducting business, filed for bankruptcy and defaulted on its leasehold obligations pursuant to the lease with the plaintiff.

---

[1] We decline to review the claim by Montowese and Seymour Beacon Falls that they have a permissive right to intervene because they failed to raise this claim before the trial court. See *State* v. *Sorabella*, 277 Conn. 155, 216, 891 A.2d 897 (2006).

Prior to filing for bankruptcy protection, Seymour Specialty Wire failed to pay the defendant a significant amount of real property taxes, causing the defendant to place tax liens on the property. Concerned that the defendant could foreclose on the property to satisfy the tax liens, the plaintiff entered an agreement with the defendant that allowed it to stay on the premises and continue conducting business. The agreement provided that the plaintiff would pay the defendant $5500 per month until such a time when either party terminated the agreement with thirty days notice. The agreement specifically provided that the moneys "will be held in escrow to be applied to the purchase of the subject premises and to the outstanding tax liens on Seymour Specialty Wire real estate property . . . and the [defendant] will notify the ultimate seller of the subject premises of said [moneys] being held in escrow for their consideration at the time of any sale of the subject premises also to be credited toward the purchase of subject premises by [the plaintiff]."

The plaintiff made monthly payments pursuant to the agreement from August, 1994, through April, 1998, placing a total of $247,500 in the escrow account held by the defendant. During that time, the plaintiff made several unsuccessful attempts to purchase the property. At some point during 1998, the predecessor in interest to Montowese purchased the property from the defendant and paid the outstanding tax liens. Seymour Beacon Falls, the current owner, purchased the property from Montowese in 2002.

In 2005, the plaintiff instituted a declaratory judgment action against the defendant, seeking the return of the $247,500 being held in escrow. Montowese and Seymour Beacon Falls subsequently filed a motion to admit new parties pursuant to Practice Book § 9-18, claiming that the agreement between the plaintiff and the defendant confers third party beneficiary rights on them and that,

consequently, they have an interest in the funds being held in escrow. The court denied their motion, concluding that "there is nothing in the plain words of the escrow agreement, nor are there any interpretations that may be reasonably implied from these words, indicating that the funds would be given to an unknown purchaser of the property who was a stranger to the transaction or who would have no relationship with the plaintiff.

"[The position of Montowese and Seymour Beacon Falls] that the escrow agreement creates some form of third party beneficiary agreement giving them some interest in this controversy fails as a matter of law. This position can only be supported by an extraordinarily strained and tortuous interpretation of the escrow agreement between the plaintiff and the [defendant] that is not warranted by any rational rule of construction applicable to this case."

On appeal, Montowese and Seymour Beacon Falls argue that they have a right to intervene as parties in interest pursuant to § 52-29 (a) and Practice Book § 17-56 (b) because, as purchasers of the property that was the subject of the agreement between the plaintiff and the defendant, they are third party beneficiaries of the agreement. The plaintiff argues that the plain language of the agreement, and the circumstances surrounding its creation, clearly indicate that the plaintiff and the defendant did not intend to create third party beneficiary rights in Montowese or Seymour Beacon Falls.[2]

---

[2] The plaintiff initially asserts that we lack subject matter jurisdiction to review the claim because the court's denial of the motion to admit new parties is not a final judgment from which Montowese and Seymour Beacon Falls immediately may appeal. Subject matter jurisdiction is a threshold inquiry; *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000); thus, we ordinarily would need to resolve this issue at the outset. Whether the denial of a motion to intervene is a final judgment from which Montowese and Seymour Beacon Falls immediately may appeal depends on "whether the would-be intervenor can make a colorable claim to intervention as a matter of right." (Internal quotation marks omitted.) Id., 435. Because we conclude

We begin by setting forth the legal principles relevant to the underlying declaratory judgment action. "[Section] 52-29 authorizes the Superior Court to adjudicate declaratory judgment actions and delegates to the judiciary the task of making rules to govern such actions." *AIU Ins. Co.* v. *Brown*, 42 Conn. App. 363, 368, 679 A.2d 983 (1996). Before a court may render a declaratory judgment, "[a]ll persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. . . ." Practice Book § 17-56 (b). Because "[t]he purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties"; (internal quotation marks omitted) *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 536, 754 A.2d 153 (2000); the statute and rules should be interpreted liberally to carry out the remedial purpose of such judgments. *Pequot Spring Water Co.* v. *Brunelle*, 46 Conn. App. 187, 196, 698 A.2d 920, cert. granted on other grounds, 243 Conn. 928, 701 A.2d 658 (1997) (appeal withdrawn March 13, 1998).

Whether Montowese and Seymour Beacon Falls have a direct, immediate and adverse interest in the plaintiff's declaratory judgment action depends on whether Montowese and Seymour Beacon Falls are third party beneficiaries of the agreement between the plaintiff and the defendant. It is well settled that "[w]here the language of the contract is clear and unambiguous, the contract is

that the agreement between the plaintiff and the defendant is ambiguous, we are unable to determine, without further fact-finding by the trial court, whether Montowese and Seymour Beacon Falls are able to make a colorable claim to intervention as a matter of right. Absent a showing that Montowese and Seymour Beacon Falls are unable to intervene as a matter of right, we will exercise jurisdiction over this appeal.

to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Citation omitted; internal quotation marks omitted.) *Detels* v. *Detels*, 79 Conn. App. 467, 471–72, 830 A.2d 381 (2003).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005).

In considering whether the agreement between the plaintiff and the defendant conferred third party beneficiary rights on Montowese and Seymour Beacon Falls, we are mindful that "[t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of

the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although [our Supreme Court has] explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . [the court has] emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under [this] rule, because the parties to the contract so intended. . . .

"The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." (Citations omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 580–81, 833 A.2d 908 (2003).

Paragraph nine of the agreement between the plaintiff and the defendant provides: "[The plaintiff] agrees to pay the sum of [$5500] per month to the [defendant], which [moneys] will be held in escrow to be applied to the purchase of the subject premises and to the outstanding tax liens on Seymour Specialty Wire real estate property located at 15 Franklin Street, Seymour,

Connecticut and the [defendant] will notify the ultimate seller of the subject premises of said [moneys] being held in escrow for their consideration at the time of any sale of the subject premises also to be credited toward the purchase of subject premises by [the plaintiff]."

Montowese and Seymour Beacon Falls argue that this language demonstrates the intent of the parties to the agreement to benefit *any* purchaser of the property, including, but not limited to, the plaintiff. They emphasize that the phrases "*any* sale of the subject premises" and "*also* to be credited toward the purchase of subject premises by [the plaintiff]" indicate that the parties to the agreement contemplated the sale of this property to a party other than the plaintiff, and the use of the money being held in escrow to benefit such a purchaser. (Emphasis added.) They contend that the absence of any provision providing for the return of the escrowed funds to the plaintiff, in the event that the plaintiff did not purchase the property, further supports their interpretation of the agreement.[3]

The plaintiff, in contrast, claims that this language clearly establishes that the parties to the agreement intended that the money being held in escrow was to be credited toward only the plaintiff's purchase of the property. The plaintiff also argues that "the parties

---

[3] Montowese and Seymour Beacon Falls also argue that their interpretation of the contract is reinforced by language in the minutes of a meeting by the defendant's board of selectmen, dated August 24, 1999. With respect to the funds held in escrow, the minutes state: "Disperse the funds paid . . . provided there is [third] party sign off by [the subject property owners]." Montowese and Seymour Beacon Falls claim that this language reflects the defendant's intent concerning the third party beneficiary rights created by the agreement. We know of no authority, nor have Montowese and Seymour Beacon Falls directed us to any, supporting the proposition that this comment, which was made nearly five years after the parties entered the contract, should be used to interpret the parties' intent at the time the contract was created.

entered into the agreement out of concern for their own interests—the [defendant] seeking to ensure payment of back taxes and [the plaintiff] seeking assurance that its business operations would continue uninterrupted by the [defendant's] foreclosure." According to the plaintiff, the circumstances surrounding the agreement demonstrate that neither party intended to benefit any purchaser other than the plaintiff.

Because we conclude that both interpretations are reasonable readings of the agreement between the plaintiff and the defendant, the contract is ambiguous. *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, supra, 273 Conn. 735. Our conclusion that the agreement is ambiguous as to the parties' intent has two consequences. "First, it permits the trial court's consideration of extrinsic evidence as to the conduct of the parties. . . . Second, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous. . . . We construe a contract in accordance with what we conclude to be the understanding and intention of the parties as determined from the language used by them interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . The intention of the parties manifested by their words and acts is essential to determine the meaning and terms of the contract and that intention may be gathered from all such permissible, pertinent facts and circumstances." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff*, 91 Conn. App. 374, 382–83, 880 A.2d 977 (2005). Consequently, because we conclude that the agreement between the plaintiff and the defendant is ambiguous as to the creation of third party beneficiary rights in any purchaser of the property, including Montowese and Seymour Beacon Falls, we

conclude that the court should have conducted an evidentiary hearing to determine the parties' intent.

The denial of the motion to intervene is reversed and the case is remanded for an evidentiary hearing consistent with this opinion.

In this opinion the other judges concurred.