******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VALDEMIRO SANTOS *v.* MASSAD-ZION MOTOR
SALES CO., INC., ET AL.
(AC 36986)

Lavine, Beach and Alvord, Js.

*Argued May 20—officially released September 22, 2015*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Matasavage, J.)

*Richard F. Connors*, for the appellants (defendants).

*Catherine L. Creager*, with whom, on the brief, was *Kevin A. Coles*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendants, Massad-Zion Motor Sales Co., Inc. (Massad-Zion), David Massad, and Steven Zion,[1] appeal from the judgment of the trial court enforcing a settlement agreement purportedly entered into by the defendants and the plaintiff, Valdemiro Santos. The defendants claim that the court erred because the parties had not reached a clear and unambiguous agreement as to the terms of a confidentiality provision, an essential component of the parties' settlement agreement. We agree and, accordingly, reverse the judgment of the trial court.

The plaintiff instituted an action against the defendants on April 2, 2012. The complaint alleged that, in contravention of the plaintiff's employment contract, the defendants, a Wallingford retail auto dealership, which was the plaintiff's former employer, and two of its owners, knowingly and intentionally concealed from the plaintiff the amount of the monthly gross sales of vehicles in order to reduce the amount of bonuses it had to pay to the plaintiff. The defendants denied this claim in their answer.

On April 28, 2014, the court, *Hon. John W. Moran*, judge trial referee, held a pretrial conference during which the parties, represented by counsel, discussed a potential settlement. During the two hour negotiation, the parties agreed to an amount to be paid by the defendants' insurer, an amount to be paid by the defendants themselves, how the amount was to be divided between attorney's fees and damages, and to include a mutual nondisparagement and nondisclosure provision (confidentiality provision).[2] The parties represented to the court that they had reached an agreement; all that remained was for the defendants' lawyer, Richard Connors, to draft a confidentiality provision and to submit it to the plaintiff's lawyer, Catherine L. Creager, for her review.

On May 6, 2014, the plaintiff filed a motion to enforce the settlement agreement. On June 6, 2014, the defendants filed an objection to the motion on the ground that the plaintiff had breached confidentiality—a term of the settlement agreement—before the specific terms could be agreed upon, and, as such, the settlement agreement was unenforceable.

On June 9, 2014, the court, *Matasavage, J.*, held an evidentiary hearing on the motion to enforce the settlement agreement. See *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 279 (1993) (holding that settlement agreements may be summarily enforced within framework of original action); see also *Vance* v. *Tassmer*, 128 Conn. App. 101, 105, 16 A.3d 782 (2011) (trial court conducted evidentiary hearing to enforce settlement agreement pursuant to *Audubon Parking Associates*

*Ltd. Partnership*), appeal dismissed, 307 Conn. 635, 59 A.3d 170 (2013) (certification improvidently granted). The plaintiff offered two witnesses, Creager and Frank McGovern, a former Massad-Zion employee, to refute the allegation that he breached confidentiality. The following evidence was presented to the trial court.

Before leaving the courthouse after the April 28, 2014 settlement negotiation, Creager instructed the plaintiff that "he shouldn't talk about the case to anyone and if anyone approached him about the case, all he should say was that it had settled." On May 5, 2014, Connors telephoned Creager and told her that the settlement agreement was "off." In a subsequent e-mail, Connors explained that the plaintiff had breached the "condition of confidentiality" by disclosing to a third party the total settlement amount, the amount that the insurance company was to pay, and the amount the defendants planned to contribute. Creager testified that she assured Connors that the plaintiff could not possibly have disclosed such information as she had never informed the plaintiff what portion of the settlement the insurance company was supplying and what portion was the defendants' responsibility.

Creager telephoned the plaintiff to relay the conversation. Creager testified that the plaintiff had denied speaking with anyone about the settlement amount, but he did mention that Judy Miller had approached him.[3] Miller, the former fiancée of Zion, was then engaged to McGovern, who was deciding whether to pursue his own claim alleging a similar cause of action against the defendants. The plaintiff told Creager that Miller had approached him and congratulated him on reaching a settlement with the defendants. The plaintiff asserted to Creager that he did not discuss any details of the settlement with Miller; he merely acknowledged the existence of the settlement when accepting her congratulations. Creager replied to Connors in an e-mail reiterating that she had never disclosed the insurance payment information to the plaintiff, and that the plaintiff denied breaching confidentiality.

Despite assurances from the plaintiff that he had not discussed the details of the settlement, the defendants maintained that the plaintiff had "breached the condition of confidentiality" by discussing the settlement with either Miller or McGovern. McGovern testified that he had followed the plaintiff's case closely by subscribing to an e-mail notification system that reported on case developments, and when the case was taken off the trial list, he assumed the case had settled. McGovern then telephoned Miller and told her that he thought the plaintiff and the defendants had reached a settlement agreement. The defendants did not introduce any evidence to contradict McGovern's testimony.

At the hearing, both parties acknowledged that they had entered into a settlement agreement subject to the

incorporation of the confidentiality provision. Connors maintained that the terms of the confidentiality provision had yet to be negotiated and agreed upon, while Creager insisted that the terms had already been established and needed only to be "draft[ed]" and "review[ed]."[4] The court found that (1) there was a clear and unambiguous agreement as to the amount of the settlement, and (2) there was an agreement for nondisclosure, the memorialization of which was merely executory.[5] Recognizing that, in order to enter an enforceable judgment, the court would have to enter the settlement amount into the record, thereby rendering such amount public and defeating the purpose of the confidentiality provision, the court granted the parties additional time to execute a confidentiality agreement on their own. See *Suffield Development Associates, Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 560–61 n.19, 905 A.2d 1214 (2006) (judgment must specify any monetary amount owed with certainty to be enforceable).

When the parties returned to court on June 17, 2014, they had not been able to reach an agreement on their own, and the court granted the plaintiff's motion to enforce the settlement agreement, suggesting that the defendants could not accuse the plaintiff of breaching an agreement while simultaneously claiming there had been no agreement. The court found that the parties had reached a clear and enforceable settlement agreement. The court ordered the defendants to pay the plaintiff $105,000 without costs, and ordered the parties not to disclose the terms of the settlement to anyone other than their attorneys, accountants, or other entities as required by law, and to refrain from mutual disparagement. This appeal followed.

The defendants challenge the court's legal conclusion that the settlement agreement was clear and unambiguous; they argue that an element of the agreement, the confidentiality provision, was incomplete and that the court, therefore, erred in enforcing the settlement agreement. The plaintiff argues that the court had before it sufficient evidence on which to reach its conclusion that the settlement agreement was enforceable. Such evidence included Creager's notes from the April 28 settlement discussion, Creager's notes from her telephone conversation with Connors, and the e-mail sent by Connors alleging the plaintiff "breached the condition of confidentiality." This evidence does not render the settlement agreement unambiguous, however, because it fails to provide any substantive information as to the terms of the confidentiality provision.

We begin with the general principles that guide our review. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Associates Ltd. Partnership*

v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811. "The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Internal quotation marks omitted.) *Electric Cable Compounds, Inc.* v. *Seymour*, 95 Conn. App. 523, 529, 897 A.2d 146 (2006); see *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009). "A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marked omitted.) *Electric Cable Compounds, Inc.* v. *Seymour*, supra, 95 Conn. App. 529.

We agree with the defendants that the settlement agreement was not clear and unambiguous and consequently was unenforceable. Although the parties allow that the settlement agreement was to contain a confidentiality provision, and that the provision needed to be "draft[ed]" and "review[ed]," the agreement itself was not clear and unambiguous because the agreement's terms were incomplete, and, thus, not certain, nor did the terms "[convey] a definite and precise intent." Id., 529. Further, the language of the agreement, as stated on the record, was open to more than one reasonable interpretation. Id.

The parties agreed, and the court found, that the confidentiality provision was a term of the agreement. Although the parties agreed to the integration of such a provision into the settlement agreement, they did not discuss or report to the court any precise terms beyond the generic modifiers "confidentiality" and "nondisclosure" before the plaintiff filed his motion to enforce the settlement agreement. "A contract is not made so long as, in the contemplation of the parties, something remains to be done . . . ." *Klein* v. *Chatfield*, 166 Conn. 76, 80, 347 A.2d 58 (1974). "[N]umerous Connecticut cases require definite agreement on the essential terms of an enforceable agreement." (Internal quotation marks omitted.) *Coady* v. *Martin*, 65 Conn. App. 758, 766, 784 A.2d 897 (2001), cert. denied, 259 Conn. 905, 789 A.2d 993 (2002); cf. *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 844, 779 A.2d 174 (2001) ("[u]nder the modern law of contract, if the parties so intend, they may reach a binding agreement even if some of the terms of that agreement are still indefinite").

The only evidence in the record[6] as to the terms of the confidentiality provision appears in Creager's testimony and her notes from the April 28 settlement negotiation, and Connors' statements at the *Audubon* hearing. Creager's notes say, "mutual nondisparagement and nondisclosure," while, at the hearing, the

defendants indicated they needed a particularized confidentiality provision to protect themselves and their business against potential future litigation. Creager's informal notes do not show a "definite agreement on the essential terms . . . ." (Internal quotation marks omitted.) *Coady* v. *Martin*, supra, 65 Conn. App. 766. Indeed, when asked at oral argument before this court, Creager was unable to articulate precisely what the confidentiality provision was to entail, other than a nondisparagement clause.[7]

The trial court made no findings about the terms of the confidentiality provision but instead stated: "Nondisclosure means you don't disclose anything." This generalized interpretation of "nondisclosure" does not provide any guidance as to either party's rights or duties under the provision. See id., 767–68 (declaring agreement unenforceable when parties had agreed to assign rights "at a later date" because agreement "did not delineate the extent of the interests of the defendants" [internal quotation marks omitted]). Consequently, the only language on the record before us is ambiguous.

Our decision in *WiFiland, LLP* v. *Hudson*, 153 Conn. App. 87, 100 A.3d 450 (2014), informs our analysis of the present case. There, an internet provider, the plaintiff, and the operators of a recreational vehicle park, the defendants, entered into settlement discussions to try to resolve the case, which arose from the defendants' alleged failure to provide the plaintiff with proper notice that they had wanted to cancel their internet service. Id., 91, 92, 104. The plaintiff agreed to accept a specific monetary amount from the defendants, subject to the plaintiff's approval of a confidentiality agreement drafted by the defendants. Id., 104. After the defendants submitted the confidentiality agreement to the plaintiff, however, the plaintiff rejected it because it no longer wanted to settle for the price previously agreed upon. Id., 105. In a hearing on the defendants' motion to enforce the settlement agreement, the trial court found that the confidentiality provision was an essential component of the parties' agreement, and the parties had failed to agree on an essential term. Id., 106. The entire settlement agreement was conditioned upon the drafting of and agreement to the terms of a confidentiality provision. See id., 104. The plaintiff had essentially "reserved the right to reject the confidentiality provision," and when he exercised this right, the provision failed, and so too did the rest of the contract. Id., 106–107. Therefore, this court affirmed the trial court's decision to deny the motion to enforce the settlement. Id., 107.

Similarly, the settlement agreement in the present case contained an incomplete essential term, the confidentiality provision, which, as it turned out, was neither drafted nor approved. The plaintiff argues that the set-

tlement agreement in this case, in contrast to the agreement in *WiFiland, LLP*, was not conditioned on a future event, such as the drafting of a confidentiality provision. Although the plaintiff did not explicitly reserve his right to reject the confidentiality provision, there was no guarantee that any such provision would have been accepted; otherwise, Creager would not have needed to "review" the draft of the provision furnished by the defendants. In *WiFiland, LLP*, the plaintiff rejected the defendant's provision because it hoped to negotiate a more advantageous settlement, and, here, the defendants declined, under the circumstances, to draft a confidentiality provision because of their professed belief that a confidentiality agreement was, by then, pointless. In either scenario, the terms were incomplete.

Furthermore, the settlement agreement is not clear and unambiguous for the related reason that its language is "susceptible to more than one reasonable interpretation . . . ." (Internal quotation marks omitted.) *Electric Cable Compounds, Inc.* v. *Seymour*, supra, 95 Conn. App. 529. The parties agree that the confidentiality provision remained to be drafted and reviewed, but the settlement agreement itself lacked definitive language about the executory process, rights, or duties to be included in the provision. The defendants interpreted the need to "draft" and to "review" the confidentiality provision to mean that the parties had "another step" ahead of them—agreeing to the particulars of the confidentiality provision—before finalizing the settlement agreement. The plaintiff argues that "review" meant, simply, that the plaintiff would check the draft to ensure it matched the oral agreement the parties reached in their April 28 settlement negotiation. The plaintiff testified that the specifics of the confidentiality provision needed no further negotiation. Nevertheless, "mutual nondisparagement and nondisclosure" or "confidentiality" can reasonably be interpreted to mean different things; therefore, we agree with the defendants that the agreement is ambiguous.

In *Ballard* v. *Asset Recovery Management Co.*, 39 Conn. App. 805, 810, 667 A.2d 1298 (1995), cert. denied, 236 Conn. 906, 670 A.2d 1306 (1996), relied on by the plaintiff, this court held that a settlement agreement was not enforceable because the contract's language was not definitive enough to be considered clear and unambiguous. There, the plaintiff purchasers had entered into a contract with the defendant seller to buy real estate in New Milford, but the defendant seller refused to convey the property. Id., 807. The plaintiffs brought an action for specific performance and damages. Id. Before the trial commenced, the parties attempted to settle the case. Id. The defendants agreed to pay the plaintiffs $22,500 in exchange for, inter alia, their withdrawal of the action. Id. The defendants believed they had conditioned the settlement upon the

plaintiffs' accounting of $11,000 in expenses by including a clause reading: "In addition, you have agreed to provide me with the receipts and copies of the cancelled checks for all of the extras your clients have paid for in connection with the subject property." (Internal quotation marks omitted.) Id., 807, 809. When the defendants learned that the plaintiffs had not spent as much as they had represented during the settlement negotiation, the defendants refused to pay the settlement amount. Id. The defendants maintained that the "extras" clause required the plaintiffs to produce receipts totaling their expenses as represented in negotiations, $11,000, but the plaintiffs claimed that the clause did not impose a condition upon their agreement to settle. Id., 809. The clause did not further clarify the meaning, but the trial court nonetheless found that the settlement agreement was clear and unambiguous.[8] Id., 808. This court agreed with the defendants that "the language of the extras clause is not sufficiently definitive to support the trial court's legal conclusion that the contract was clear, unambiguous and, therefore, enforceable summarily." Id.

In the present case, the plaintiff and defendants disputed how the confidentiality provision was to be executed and the level of detail it required. To the plaintiff, the execution of the confidentiality provision was ministerial—a mere formality. To the defendants, the confidentiality provision was to be a more nuanced and fastidious effort to protect the defendants' privacy interests with, most notably, an articulated enforcement mechanism. At oral argument before this court, Creager was unable to articulate what rights, if any, the plaintiff had under the confidentiality provision. For example, Creager could not specify whether the opportunity to review the provision bestowed upon the plaintiff the authority to reject the confidentiality provision, or even the settlement itself, because the plaintiff indicated he never had an "opportunity to reject any writing." See *Coady* v. *Martin*, supra, 65 Conn. App. 768 (holding contract unenforceable "because it did not delineate the extent of the interests of the defendants . . . and therefore lacked an essential term"). Just as this court concluded in *Ballard* that the settlement agreement was unenforceable because it lacked definitive language, was susceptible to dispute, and was, thus, not clear and unambiguous, the settlement agreement on the record in the present case is unenforceable.

The judgment is reversed, and the case is remanded to the trial court for further proceedings.

In this opinion the other judges concurred.

[1] We refer herein to Massad-Zion, Massad, and Zion jointly as the defendants and individually, when necessary, by name.

[2] This provision is variously referred to throughout the transcript and briefs as a confidentiality agreement, a confidentiality provision, and a nondisclosure provision. For simplicity, all references in this opinion are to the confidentiality provision.

[3] At the time, Miller was pursuing her own action against Massad-Zion.

⁴ Connors conceded that he and Creager both knew how to draft a confidentiality agreement generally but that, in this case, the agreement needed to be "nailed down" with specificity to ensure that the defendants would be adequately protected from any form of disclosure in light of their particular business.

⁵ The court did not address whether the plaintiff actually had breached the confidentiality of the settlement agreement.

⁶ The court made no findings of fact regarding the plaintiff's alleged disclosure of the details of the settlement or the terms of the parties' understandings of the confidentiality provision.

⁷ In his appellate brief, the plaintiff refers to *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 240, 907 A.2d 1274 (2006) (*Aquarion*), which held: "We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached." (Internal quotation marks omitted.) We agree with this proposition; however, it is inapplicable to the present case. A confidentiality agreement cannot be clarified or modified as anticipated by *Aquarion* when it does not yet exist. There can be no "subsequent negotiations" when there has not been an initial negotiation. *Aquarion* might have been applicable if the monetary amount had been in dispute, for example, because the parties had already negotiated and agreed to the amount. That was not the case here because, according to Connors, the confidentiality provision was to include a number of different details the parties had not yet addressed, such as what information was protected, the method of enforcement, and to whom the settlement details could be disclosed.

⁸ Like the trial court in the present case, the trial court in *Ballard* did not address the legal relevance of the disputed terms in the settlement agreement. Instead, the *Ballard* trial court looked to a letter written by the defendant's lawyer indicating that the parties had come to an agreement. *Ballard* v. *Asset Recovery Management Co.*, supra, 39 Conn. App. 809. It consequently relied on the defendant's use of the word " 'agreement' " to find that the parties had reached an enforceable settlement agreement. Id. Similarly, in the present case, the court interpreted Connors' use of the phrase "breached the condition" in an e-mail to Creager as an acknowledgment that a final contract had been formed between the parties. In both cases, the trial court "should have considered *all* of the language of the contract," rather than relying on the language contained within the extrinsic evidence presented to the court. (Emphasis added.) Id. A party's reference to a breach, or allusion to an agreement does not, by itself, necessitate a finding that a contract existed or that such a contract is enforceable.

The trial court here stated that the defendants could not have claimed a breach if there had not been a contract. The difficulty with this position is that, had the plaintiff acted as alleged by the defendants, any potential confidentiality agreement would have been breached.

———————————————