CRISTIN PEDRO *v.* JOSEPH MILLER ET AL.
(SC 17482)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued October 23, 2006—officially released January 23, 2007

*Andrew J. O'Keefe*, with whom was *Joseph M. Busher, Jr.*, for the appellants (named defendant et al.).

*Robert E. Kiley*, with whom were *Bradley M. Smolkin*, and, on the brief, *Elizabeth Adams*, for the appellee (apportionment defendant).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether, under the circumstances of the present case, equitable reasons existed to toll the statute of limitations for serving an apportionment complaint. The defendants, Joseph Miller and Builders, Inc., appeal[1] from the judgment of the trial court granting the motion to dismiss the apportionment defendant, Edward Hargus, based on the failure of Miller to serve the apportionment complaint upon Hargus within 120 days of the return date of the original complaint, as required by General Statutes § 52-102b (a).[2] The defendants claim that the trial court improperly concluded that there were no equitable con-

---

[1] Following the defendants' appeal to the Appellate Court from the judgment of the trial court, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-102b (a) provides: "A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. *Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint.* The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h." (Emphasis added.)

siderations that tolled the applicable statute of limitations. We agree and, accordingly, we reverse the judgment of the trial court.

The following relevant facts and procedural history are not in dispute. On December 22, 2001, the plaintiff, Cristin Pedro, suffered injuries as a result of a collision between the minivan she was driving and a vehicle owned by Builders, Inc., and operated by Miller, who was an employee of Builders, Inc. She filed a complaint, sounding in negligence, with a return date of February 18, 2003. In her original complaint, the plaintiff alleged that she suffered the following injuries as a result of the accident: pain in the left shoulder and arm; acute left trapezius muscle strain and sprain in her neck; shoulder stiffness; right leg pain; hip pain; low back pain; herniated or bulging discs; and headaches. Soon after filing the complaint against the defendants, the plaintiff began treatment for her injuries with Hargus, her physician. On June 29, 2004, the plaintiff filed an amended complaint, adding the allegation that, during her treatment for her other injuries, she suffered from a cerebrospinal fluid leak. On October 6, 2004, the plaintiff filed a second amended complaint. In response to the new allegation regarding the injuries the plaintiff alleged she had suffered during treatment, the defendants served an apportionment complaint on Hargus on October 22, 2004, and filed the complaint on November 16, 2004, pursuant to General Statutes §§ 52-102b and 52-572h. The trial court granted Hargus' motion to dismiss the apportionment complaint, concluding that it lacked personal jurisdiction over him because the apportionment complaint was served more than 120 days after the return date set forth in the original complaint, and because there was no evidence of waiver or consent.[3] This appeal followed.

---

[3] The court also granted Hargus' motion to dismiss the plaintiff's complaint against him, filed on November 9, 2004, concluding that, because the court lacked personal jurisdiction over him based on the untimely filing of the

The defendants claim that the trial court improperly granted Hargus' motion to dismiss because there were compelling equitable considerations to toll the 120 day statute of limitations. We agree.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Haight*, 279 Conn. 546, 550, 903 A.2d 217 (2006).

Section 52-102b (a) establishes a limit of 120 days from the return date specified in the original complaint within which defendants may serve an apportionment complaint on other persons who are not parties to the action, and who are or may be liable for a proportionate share of the plaintiff's damages. We have recently interpreted § 52-102b (a) in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 848 A.2d 418 (2004). Because our statutory analysis in that case governs the result in the present case, it is useful, preliminarily, to set forth that analysis.

In *Lostritto*, we clarified two key aspects of the 120 day limit, concluding that it implicates personal jurisdiction and that compliance with the limit is mandatory. Id., 14. Regarding the type of jurisdiction implicated by the 120 day limit, we began by reviewing the distinctions between personal and subject matter jurisdiction.

apportionment complaint, it also lacked personal jurisdiction over him for purposes of the plaintiff's complaint. The plaintiff has not appealed from the judgment of the trial court.

"[J]urisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . A defect in process, however, such as an improperly executed writ, implicates personal jurisdiction, rather than subject matter jurisdiction. . . . [W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. . . . The jurisdiction that is found lacking, however, is jurisdiction over the person, not the subject matter." (Citations omitted; internal quotation marks omitted.) Id., 31. Because a failure to comply with the 120 day limit of § 52-102b (a) constitutes a defect in service of process, the failure deprives the court of personal jurisdiction over the apportionment defendant. Id., 32–33.

We also concluded that "compliance with the time limitation contained in § 52-102b (a) is mandatory . . . ." Id., 17. In so concluding, we first looked to the language of the statute, which provides that the apportionment complaint *"shall* be served within one hundred twenty days of the return date specified in the plaintiff's original complaint." (Emphasis added.) General Statutes § 52-102b (a); *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 20. The use of the word "shall," we observed, although not dispositive on the issue of whether a statute's directive is mandatory, suggests that it is so, a suggestion that is reinforced by the linguistic evolution of the statute, which reveals that in various revisions of the statute, the legislature consistently "opted for strong, compulsory language when referring to the time limitation for commencing an apportionment action." *Lostritto* v. *Com-*

*munity Action Agency of New Haven, Inc.,* supra, 21–22. That compliance with the time limit is mandatory is further supported by subsection (f) of the statute, which provides that § 52-102b is the "exclusive means" by which a party may be added for purposes of apportioning liability. General Statutes § 52-102b (f);[4] *Lostritto* v. *Community Action Agency of New Haven, Inc.,* supra, 20–21. Finally, we noted that, because § 52-102b created a right that did not exist at common law, the statute of limitations imposed in the statute is substantive rather than merely procedural. That is, "the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.,* supra, 23. On the basis of our consideration of all these factors, we concluded that the 120 day limit imposed in § 52-102b is mandatory, and, therefore, "failure to comply with its requirements prevents a defendant from exercising the right to apportion liability." Id., 26.

Mandatory compliance with the 120 day limit, however, is not without exception. Mandatory time limitations, we stated, "must be complied with *absent an equitable reason for excusing compliance,* including waiver or consent by the parties." (Emphasis added; internal quotation marks omitted.) Id., 35–36. We did not enumerate in *Lostritto* other equitable reasons, beyond waiver or consent, that would excuse compliance with the 120 day limit. The issue before us in the present case is whether the fact that the legal basis for apportioning liability arose only after the 120 day limit already had expired constitutes an equitable reason justifying excu-

[4] General Statutes § 52-102b (f) provides: "This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action."

sal from compliance with the limit. We conclude that it does.

It is useful to review the relevant procedural history in considering this issue. The return date specified in the original complaint was February 18, 2003. The defendants served the apportionment complaint upon Hargus on October 22, 2004, approximately twenty months after the return date. The original complaint, however, provided the defendants with no basis to seek apportionment against Hargus pursuant to § 52-102b (a), which limits the persons against whom apportionment may be sought to those who "may be liable pursuant to [General Statutes § 52-572h] for a proportionate share of the plaintiff's damages . . . ." In the original complaint, the plaintiff alleged injuries that she had suffered only as a result of the accident itself; she made no allegations regarding any additional injuries resulting from her treatment for her initial injuries. It was only when the plaintiff filed the amended complaint on June 29, 2004, more than sixteen months after the original return date, that she added allegations that she had suffered a cerebrospinal fluid leak *during her treatment* for her other injuries arising from the accident. Until she made this allegation in the amended complaint, the defendants had no factual or legal basis for seeking apportionment against Hargus. Therefore, the legal basis for the defendants to seek apportionment from him did not arise until after—indeed, long after— the 120 day limit already had passed. Consequently, it was impossible for the defendants to serve the apportionment claim upon Hargus within the 120 day limit established by § 52-102b (a). Such a circumstance presents a compelling equitable reason for excusing compliance with the limit set forth in that statute.

Hargus suggests that we intended—when we stated in *Lostritto* that equitable considerations may excuse compliance with the 120 day limit—that only the two

enumerated equitable considerations, waiver and consent, would excuse such compliance. We disagree. The precise language we used in *Lostritto* is inconsistent with such a narrow interpretation. We stated that the 120 day limit "must be complied with absent an equitable reason for excusing compliance, *including* waiver or consent by the parties." (Emphasis added; internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 35–36. The word "including" indicates that the enumerated reasons do not comprise an exhaustive list, but rather that they are merely examples. Those two reasons serve particularly well as illustrative examples of equitable reasons for tolling the statute of limitations in § 52-102b (a) because they have always conferred personal jurisdiction upon a court despite defects in service of process. See *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985) ("[u]nlike subject matter jurisdiction . . . personal jurisdiction may be created through consent or waiver"). They are, therefore, the two paradigmatic and classic exceptions to a lack of personal jurisdiction due to a defect in service of process. To infer, based on the fact that *Lostritto* lists only these two classic, illustrative exceptions, that these are the *only* two equitable reasons that would excuse compliance with the time limit in § 52-102b (a) both misconstrues the nonexclusive language that we employed in citing to those two examples, and ignores the fact that these two reasons are textbook illustrations of equitable reasons for tolling a statute of limitations that implicates personal jurisdiction. Hargus also points to the next sentence in *Lostritto*, in which we noted that "[t]he facts of this appeal present no evidence of waiver or consent." *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 36. Hargus argues that, because the court considered only whether the defendants in *Lostritto* had argued waiver

or consent in determining whether equitable considerations justified tolling the statute of limitations in § 52-102b, those are the only two exceptions for noncompliance. That argument ignores the fact that the defendants in *Lostritto* made no argument whatsoever that equitable considerations excused their noncompliance with the 120 day limit—instead, their argument was that the statute was directory rather than mandatory. Id., 14.

We are also unpersuaded by Hargus' contention that allowing exceptions for equitable considerations beyond waiver and consent is inconsistent with one of the primary purposes underlying the apportionment statutes, namely, to develop a uniform and predictable mechanism for the apportionment of liability. As we stated in *Lostritto*, "§ 52-102b was designed to create an effective means of accomplishing apportionment with *reasonable* certainty." (Emphasis added.) Id., 26. Allowing for exceptions to the 120 day limit for equitable reasons is consistent with that goal. The concept of "reasonable" certainty embodies the concept that the ideal of predictability cannot be so rigidly adhered to that the apportionment system must tolerate inequities that are easily avoided by allowing exceptions where equity demands them. Put another way, the phrase "reasonable certainty" implies that in certain circumstances, certainty must be balanced against other goals. In striking that balance, we have already concluded, in *Lostritto*, that in some cases, equitable considerations justify an exception to the 120 day limit. This is such a case.

The judgment is reversed and the case is remanded to the trial court with direction to deny the motion to dismiss the apportionment complaint, and for further proceedings according to law.

In this opinion the other justices concurred.