JOHN SULLIVAN *v.* THOMAS THORNDIKE ET AL.
(AC 27339)

DiPentima, McLachlan and McDonald, Js.

Argued March 13—officially released November 6, 2007

*Robert H. Boynton*, for the appellant (plaintiff).

*Jason L. Musante*, with whom, on the brief, was *Audrey J. Porzio*, for the appellee (named defendant).

*Opinion*

DiPENTIMA, J. In this appeal, we address the parameters of a dismissal entered pursuant to Practice Book § 15-8. The plaintiff, John Sullivan, appeals from the judgment of the trial court dismissing his complaint

against the defendant Thomas Thorndike[1] on the ground that the plaintiff failed to make out a prima facie case of breach of contract and embezzlement pursuant to Practice Book § 15-8. On appeal, the plaintiff claims that (1) he presented sufficient evidence that established damages as an element of his breach of contract claim and the defendant's misappropriation of funds as an element of his embezzlement claim, (2) the court improperly based its granting of the defendant's motion to dismiss on his special defenses and (3) the court improperly vacated the plaintiff's prejudgment remedy prior to a final judgment on the pending appeal. We affirm in part and reverse in part the judgment of the trial court.

We view the evidence presented by the plaintiff in the light most favorable to him. Toward the end of 1996, the parties, who were longtime social acquaintances, made an oral agreement to form a limited liability corporation for the purpose of purchasing and selling certain pieces of real estate. On January 10, 1997, the defendant formed Diko Development, LLC (Diko). The only two members of Diko were the defendant and his wife, Theresa Thorndike. The plaintiff was not a member of Diko. In February, 1997, three parcels of real estate were purchased through Diko with funds contributed by both the plaintiff and the defendant.[2] All three properties were eventually sold in 1998 and 2000. The plaintiff brought this claim against the defendant in 2001, alleging breach of contract and embezzlement arising from the parties' failed attempt to form the limited

[1] The plaintiff also named Theresa Thorndike as a defendant in his complaint. The claim against Theresa Thorndike was withdrawn prior to trial, and she is not a party to this appeal. We therefore refer in this opinion to Thomas Thorndike as the defendant.

[2] The combined purchase price for the three properties totaled $94,294.52, of which $82,000 was contributed by the plaintiff and the balance from the defendant. A promissory note was subsequently executed by Diko in favor of the plaintiff in the amount of $82,000.

liability company with the parties as members. The plaintiff filed an application for a prejudgment remedy seeking to attach property belonging to the defendant, which the court granted on February 21, 2001. A trial to the court was held, and, at the end of the plaintiff's case, the defendant moved to dismiss the action for failure to make out a prima facie case pursuant to Practice Book § 15-8. The court granted the defendant's motion, and the case was dismissed. In its dismissal, the court ruled that the plaintiff had not made out a prima facie case of breach of contract because he failed to establish damages and had not made out a prima facie case of embezzlement because he failed to establish ownership of the property at issue. The court also based its ruling on its determination that the plaintiff's breach of contract claim was barred by the defendant's special defenses: the statute of limitations and statute of frauds. The plaintiff subsequently filed a motion to reargue and a motion for a new trial. The defendant filed a motion to vacate the prejudgment remedy. On January 11, 2006, the court issued a decision denying the plaintiff's two motions and granting the defendant's motion to vacate the prejudgment remedy. This appeal followed.

I

Before addressing the plaintiff's claims on appeal, we first must consider the threshold question raised by the defendant of whether this court lacks subject matter jurisdiction to hear this appeal. "[J]urisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Pedro* v. *Miller*, 281 Conn. 112, 117, 914 A.2d 524 (2007). The defendant challenges this court's jurisdiction to hear the present appeal on the basis of the plaintiff's failure to name Diko as a party

to this action. We note that Diko's absence as a defendant does not affect our jurisdiction over this appeal; see General Statutes § 52-263; and we are not precluded from addressing the issue of whether its absence may implicate the subject matter jurisdiction of the trial court. See *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996); see also *Bauer* v. *Souto*, 277 Conn. 829, 838, 896 A.2d 90 (2006). We conclude, therefore, that we do have jurisdiction over this appeal.

With respect to whether the trial court had subject matter jurisdiction over the underlying action, our standard of review is well established. Our Supreme Court has "long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 6, 917 A.2d 966 (2007). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 275, 914 A.2d 1025 (2007). Following our Supreme Court's reasoning, we previously have stated: "The nonjoinder of a party implicates the court's subject matter jurisdiction and therefore requires dismissal *if a statute mandates the naming and serving of the party*." (Emphasis added.) *Demarest* v. *Fire Dept.*, 76 Conn. App. 24, 30–31, 817 A.2d 1285 (2003); see also *Fong* v. *Planning & Zoning Board of Appeals*, 212 Conn. 628, 634–35, 563 A.2d 293 (1989). The defendant has not cited any statute that requires the plaintiff to name Diko as a party to the present action. Moreover, even if Diko is an indispensable party, if it is not "required by statute to be made a party, the court's subject matter jurisdiction is not implicated and dismissal is not required." *Demarest* v. *Fire Dept.*, supra, 31. We conclude, therefore, that the trial court had subject matter jurisdiction over the underlying action.

## II

The plaintiff first claims that he presented evidence that, when viewed most favorably to making out a prima facie case of breach of contract and embezzlement, established damages as an element of his breach of contract claim and the defendant's misappropriation of funds as an element of the embezzlement claim.

As an initial matter, we set forth the applicable standard of review. Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ." "A prima facie case . . . is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating [the trial court's decision on] a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Internal quotation marks omitted.) *Winn* v. *Posades*, 281 Conn. 50, 54–55, 913 A.2d 407 (2007); *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). "Whether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which our review is plenary." (Internal quotation marks omitted.) *Winn* v. *Posades*, supra, 55; *DiStefano* v. *Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (2005).

## A

### Breach of Contract

The plaintiff claims that the court improperly concluded that he failed to present sufficient evidence of damages as an element of his breach of contract claim to survive the defendant's motion for a judgment of dismissal.[3] We agree.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Chiulli* v. *Zola*, 97 Conn. App. 699, 706–707, 905 A.2d 1236 (2006). With respect to damages, our Supreme Court has clarified that lost profits are considered an element of compensatory damages. *Ambrogio* v. *Beaver Road Associates*, 267 Conn. 148, 155, 836 A.2d 1183 (2003). "[O]ur case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims. The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . The Restatement (Second) of Contracts divides a defendant's recovery into two components: (1) direct damages, composed of the loss in value to him of the other party's performance caused by its failure or deficiency; 3 Restatement (Second), Contracts § 347 (a) (1981); plus, (2) any other loss, including incidental or consequential loss, caused by the breach . . . . Id.,

---

[3] The plaintiff also claims that he presented evidence that established the formation of an agreement and the breach of that agreement as elements of his breach of contract action. We note, however, that the court did not base its dismissal on the absence of either of those elements. In fact, as stated in the court's articulation filed on May 30, 2006, the court specifically found that "[t]he defendant breached its promise to the plaintiff to make the plaintiff a member of the [limited liability company] . . . ."

§ 347 (b). Traditionally, consequential damages include any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. . . . Although there is no unyielding formula by which damages are calculated, it is our rule that [u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." (Citations omitted; internal quotation marks omitted.) *Ambrogio* v. *Beaver Road Associates*, supra, 155.

It is incumbent on the party asserting either direct or consequential damages to provide sufficient evidence to prove such damages. See *Frillici* v. *Westport*, 264 Conn. 266, 283, 823 A.2d 1172 (2003). Further, "[w]hen damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 646, 904 A.2d 149 (2006).

In its oral decision, the court made the following findings: "[T]here was sufficient evidence to find that there existed at the last quarter of 1996 an oral contract and that the plaintiff and the defendant agreed that they would purchase and sell real estate together and share the profits." The court, however, found that even if the plaintiff could prove liability, he failed to present sufficient evidence to support his claim for damages. After reviewing all of the evidence, the court could not determine whether there was a profit. According to the court, there was "no evidence as to what overhead might have been required for the maintenance of these properties: repairs, salaries, taxes, insurance, carrying

costs." In its articulation filed April 25, 2006, the court elaborated further on that finding, stating that: "There was nothing in the evidence to establish whether [Diko] ever made any profit from the real estate in question. There was evidence that the properties were purchased for X value and sold several years later for Y value, but there was no evidence whatsoever that the difference between those figures constituted an actual profit." The plaintiff suggests that it is the defendant's burden to show any expenses that may have reduced the profit from the sale of the real estate. We agree.

As a practical matter, it would be a Herculean task, and not one required by our law, for a party asserting a breach of contract claim founded on lost profits to be required to have advance knowledge of any carrying costs or expenses incurred by the opposing party prior to the latter presenting his case. The record supports the court's finding that the plaintiff produced sufficient evidence to establish both the purchase price and sales price of each property. Viewed in the light most favorable to the plaintiff, we conclude that the evidence was sufficient at this early stage of the proceedings to show that a profit was made on the sale of the three properties. "The amount of lost profits may be determined by approximation based on reasonable inferences and estimates." *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 541, 546 A.2d 216 (1988); see also *Burr* v. *Lichtenheim*, 190 Conn. 351, 360, 460 A.2d 1290 (1983); *Gordon* v. *Indusco Management Corp.*, 164 Conn. 262, 274, 320 A.2d 811 (1973). Whether the plaintiff can sustain his burden past this stage of the proceedings is an entirely different matter and not a question that this court needs to answer to resolve this claim. The plaintiff has presented sufficient evidence of damages as an element of his breach of contract claim to survive the defendant's motion for a judgment of dismissal. We conclude, therefore, that the court

improperly dismissed the action with respect to the breach of contract claim.[4]

## B

## Embezzlement

The plaintiff next claims that he submitted sufficient evidence to establish that the defendant misappropriated funds that belonged to the partnership for his own use and benefit. Specifically, the plaintiff contends that prior to the sale of the three properties, the defendant took out a mortgage with North American Bank for $60,000 through Diko on one of the properties, which he then converted to his own use. At the time the mortgage was secured, Diko still owed $78,655.24 on the note in favor of the plaintiff. We are not persuaded.

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes . . . (1) Embezzlement. A person commits

---

[4] The defendant urges this court to affirm the trial court's dismissal of the breach of contract claim alternatively on the basis of the absence of an enforceable contract. We decline to do so. The defendant mistakenly relies on our conclusion in *Coady* v. *Martin*, 65 Conn. App. 758, 766, 784 A.2d 897 (2001) ("absence of a provision delineating the percentage of ownership of all of the parties in the company rendered the agreement fatally incomplete"), cert. denied, 259 Conn. 905, 789 A.2d 993 (2002), to suggest that we should similarly determine that the plaintiff in this case cannot establish an enforceable contract because there was no "meeting of the minds."

We note that in *Coady*, the procedural position and, thus, our standard of review was not the same as in this case. In *Coady*, the appeal was filed after judgment was rendered subsequent to trial to the court. Here, where the plaintiff appeals from the granting of a motion to dismiss pursuant to Practice Book § 15-8, we view the evidence in the light most favorable to the plaintiff, and every reasonable inference is drawn in the plaintiff's favor. See *Winn* v. *Posades*, supra, 281 Conn. 54–55. On the basis of that standard, we conclude that there was sufficient evidence to establish a formation of an agreement between the parties to survive a motion for dismissal pursuant to Practice Book § 15-8.

embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody." As aptly stated by our Supreme Court, "[t]he crime of embezzlement is consummated where . . . the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the property of another and wrongfully converts it to his own use." *State* v. *Lizzi*, 199 Conn. 462, 467, 508 A.2d 16 (1986). Although the plaintiff attaches an embezzlement title to this claim, his allegations also sound in conversion.[5] In addition, the court treated the claim as one in conversion. As such, we also set forth the relevant law with respect to conversion.

"The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights. . . . Thus, [c]onversion is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Citation omitted; internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770–71, 905 A.2d 623 (2006). To establish a prima facie case of conversion, the plaintiff had to demonstrate that (1) the proceeds from the mortgage belonged to the plaintiff, (2) the defendant deprived the plaintiff of the proceeds for an indefinite period of time, (3) the defendant's conduct was unauthorized and (4) the defendant's conduct

---

[5] The plaintiff is seeking treble damages pursuant to General Statutes § 52-564, which requires him to establish statutory theft. "Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119. (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006). As previously stated, embezzlement is included under our larceny statute.

harmed the plaintiff. See *Discover Leasing, Inc.* v. *Murphy*, 33 Conn. App. 303, 309, 635 A.2d 843 (1993). An essential element of embezzlement and conversion is the requirement that the party asserting such a claim have either a legal right or possessory interest in the property at issue. It is the ownership element that the court found could not be satisfied when it dismissed the plaintiff's claim pursuant to Practice Book § 15-8.

Viewing the evidence in the most favorable light to the plaintiff with respect to embezzlement and conversion, he has established that (1) he and the defendant agreed to form a limited liability company for the purpose of buying and selling certain pieces of real estate, (2) Diko was formed by the defendant and his wife, and the properties were bought and sold through Diko, (3) the plaintiff lent $82,000 to Diko toward the purchase of the properties, which was later secured by a note, (4) the defendant mortgaged one of the properties through Diko without the consent of the plaintiff and (5) the defendant converted the entire proceeds of the mortgage for his own use and benefit, while still owing $78,655.24 on the note in favor of the plaintiff. Despite that evidence, the plaintiff's embezzlement and conversion claim must fail because he cannot point to specific, identifiable property to which he had a legal ownership or right, as he must in order to make out a prima facie case of conversion and embezzlement.[6] Generally, "[a]

---

[6] We acknowledge that "[t]he term owner is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 770–71. The plaintiff, however, has not produced any evidence to indicate either a legal right or possessory interest in the moneys he claims to have been deprived of in this instance.

plaintiff must establish legal ownership or right to possession in the particular thing, the specifically identifiable [property], that the defendant is alleged to have converted." (Internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 650, 804 A.2d 180 (2002). As our Supreme Court has reiterated, "[a]n action for conversion of funds may not be maintained to satisfy a mere obligation to pay money. . . . It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use. . . . [Thus] [t]he requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. . . . A mere obligation to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." (Citation omitted; internal quotation marks omitted.) Id.

The court properly concluded that the plaintiff could not establish a prima facie case of embezzlement or conversion because the plaintiff did not present evidence that he had either a legal right or possessory interest in the mortgage proceeds that he claims the defendant converted to his own use. In fact, the plaintiff testified that he was not a member of Diko, which would be necessary in order to have an interest in either the property owned by Diko or the proceeds from the mortgage on that property. Thus, he is unable to satisfy the ownership requirement necessary to make out a prima facie case of conversion or embezzlement.

III

The plaintiff next claims that the court improperly based its granting of the defendant's motion to dismiss

on the defendant's special defenses.[7] Specifically, the plaintiff claims that the court improperly dismissed the breach of contract claim on the basis of its determination that the claim was barred by the statute of limitations and that the agreement between the parties was subject to the statute of frauds.[8] We agree with the plaintiff.

Adhering to our plenary standard of review with respect to a motion to dismiss, we conclude that the court improperly considered the defendant's special defenses, the statute of limitations and statute of frauds, when dismissing the case pursuant to Practice Book § 15-8. Following the reasoning expressed by our Supreme Court in *Resnik* v. *Morganstern*, 100 Conn. 38, 42, 122 A. 910 (1923), we have stated that "[a] motion for dismissal is not generally granted when based on a special defense, such as the statute of limitations . . . ." *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 606, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003); *Resnik* v. *Morganstern*, supra, 42 (plaintiff not bound to meet defendant's affirmative defenses in establishing case); see also *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 843 n.5, 863 A.2d 735 (2005); *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992). That fundamental principle has not been altered

---

[7] We note that in light of our resolution of the plaintiff's first claim, it is necessary to reach his second claim because the court dismissed the action on the basis of the insufficiency of the plaintiff's evidence and the defendant's special defenses with respect to the breach of contract claim.

[8] The defendant contends that the plaintiff did not raise this argument before the trial court and that therefore we should not consider this claim. Our Supreme Court has noted that "to review [a] claim . . . articulated for the first time on appeal and not [raised] before the trial court, would [be nothing more than] a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 741, 631 A.2d 288 (1993). A review of the record shows, however, that the plaintiff did raise this argument before the trial court when defending against the defendant's motion to dismiss.

or modified since its inception in 1923, and we see no compelling reason to do so now. As originally stated by our Supreme Court in *Resnik* and later reiterated by this court in *John H. Kolb & Sons, Inc.*, "[i]f this were not so, a plaintiff would be compelled to assume the burden of proving not only his own case but meeting the special defenses of the defendant." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, supra, 606.[9]

The defendant's reliance on a series of cases in which dismissals granted on the basis of collateral estoppel were permitted is misplaced. Collateral estoppel is fundamentally different from either the statute of frauds or the statute of limitations. Taking note of the distinct characteristics of that defense, we held specifically that although most defenses cannot be considered on a motion to dismiss, "a trial court can properly entertain a § 302 [now § 15-8] motion to dismiss that raises collateral estoppel grounds." *Carnese* v. *Middleton*, supra, 27 Conn. App. 539; id., 538–39 ("the application of the principle of collateral estoppel as a defense, if it was a defense on which the defendants could ultimately prevail, would preclude the plaintiff from proving his action"). It is quite plausible that a court could determine whether a claim or issue had been previously decided after the close of the plaintiff's case. "The essence of collateral estoppel is that there is no additional evidence that a party can produce that would

---

[9] The defendant argues that because the *Resnik* court was addressing an issue of nonsuit and not a dismissal for failure to make out a prima facie case, we should ignore the reasoning in that opinion. We find that to be a distinction without a difference for purposes of the present case. As our Supreme Court has previously clarified with respect to those two motions, "a motion for a judgment of dismissal has replaced the former nonsuit for failure to make out a prima facie case. . . . Under either motion it was, and is, the duty of the trial court to take as true the evidence offered by the plaintiff and to interpret it in the light most favorable to him, with every reasonable inference being drawn in his favor." (Citation omitted.) *Berchtold* v. *Maggi*, 191 Conn. 266, 271, 464 A.2d 1 (1983).

require a different resolution of a disputed ultimate fact." Id., 539. The same cannot be said for either the statute of limitations or the statute of frauds. In *Carnese*, this court recognized that distinction when we affirmed the trial court's dismissal of the party's action on the basis of collateral estoppel. Id., 538. In the present case, the defendant has provided no authority for this court to expand the holding in *Resnik* to include a statute of frauds or statute of limitations defense. We conclude, therefore, that the court improperly dismissed the breach of contract claim on the basis of the statute of frauds and statute of limitations as set forth in the defendant's special defenses.

IV

The plaintiff's final claim is that the court improperly vacated his prejudgment remedy prior to a final judgment on the pending appeal.

"Appellate review of a trial court's broad discretion to deny or grant a prejudgment remedy is limited to a determination of whether the trial court's rulings constituted clear error." *State* v. *Ham*, 253 Conn. 566, 568, 755 A.2d 176 (2000). The court heard extensive testimony regarding the merits of the plaintiff's claim before granting the defendant's motion to dismiss. In light of our reversal of the trial court's judgment with respect to the breach of contract claim, however, we must conclude that the court improperly vacated the plaintiff's prejudgment remedy.[10]

---

[10] We note that our conclusion merely will serve to preserve the prejudgment remedy in the amount originally ordered, the vacating of which was stayed during the pendency of this appeal. Whether the remedy amount should be modified on the basis of our conclusion is not for this court to determine. General Statutes § 52-278k provides in relevant part: "Modification of prejudgment remedy. . . . The court may, upon motion and after hearing, at any time modify or vacate any prejudgment remedy granted or issued under this chapter upon the presentation of evidence which would have justified such court in modifying or denying such prejudgment remedy under the standards applicable at an initial hearing."

The judgment is reversed as to the dismissal of the action for failure to make out a prima facie case of breach of contract and the vacating of the plaintiff's prejudgment remedy, and the case is remanded for a new trial as to breach of contract. The judgment is affirmed in all other respects.

In this opinion McLACHLAN, J., concurred.

MCDONALD, J. Concurring in part and dissenting in part. Although I agree as to the breach of contract count, I respectfully disagree with the conclusion in part II B of the majority opinion that the plaintiff, John Sullivan, has failed to make out a prima facie case of statutory theft by embezzlement.

I conclude, considering the plaintiff's evidence in a favorable light, that the plaintiff presented sufficient evidence to make out a prima facie case. A trier of fact could find that the plaintiff, knowing certain properties could be purchased because of the plaintiff's relationship with the owners, contacted the defendant Thomas Thorndike, a lifelong friend, to have the defendant form a limited liability company in which the plaintiff and the defendant would be members. After acquiring these properties, the plaintiff and the defendant would share equally in any profits from their resale. To purchase the properties, the plaintiff advanced the sum of $82,000. When the defendant formed Diko Development, LLC (Diko), which took title to the properties, he did not, as promised, make the plaintiff a member of Diko. Although the defendant led the plaintiff to believe that the plaintiff was a member of Diko, the defendant and the defendant's wife were its only members. Unknown to the plaintiff, the defendant then mortgaged one of the properties, and the defendant obtained and kept the entire proceeds, the net of a $60,000 mortgage loan. When this property was sold and the mortgage was paid off, there were no funds to repay the

plaintiff's advance and to pay the plaintiff half the profits while the defendant had received $93,000.

To establish a prima facie case of embezzlement, the plaintiff had to produce evidence that the funds he gave to the defendant belonged to the plaintiff and that, without the plaintiff's authorization, the defendant intentionally misappropriated the funds to benefit himself to the detriment of the plaintiff. See *State* v. *Radzvilowicz*, 47 Conn. App. 1, 19–22, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997); see also General Statutes § 53a-119 (1); *State* v. *Lizzi*, 199 Conn. 462, 467, 508 A.2d 16 (1986); *State* v. *Moreno*, 156 Conn. 233, 238, 240 A.2d 871 (1968). I conclude that the plaintiff did so.

Accordingly, I respectfully dissent.