JOHN SULLIVAN *v.* THOMAS THORNDIKE ET AL.
(AC 33002)

Gruendel, Beach and Bear, Js.

Argued May 21—officially released July 31, 2012

*John Sullivan*, pro se, the appellant (plaintiff).

*Robert P. Hanahan*, with whom, on the brief, was *Jason Musante*, for the appellee (named defendant).

GRUENDEL, J. The self-represented plaintiff, John Sullivan,[1] appeals from the judgment of the trial court, rendered after a bench trial, in favor of the defendant Thomas Thorndike.[2] He claims that the court improperly (1) failed to apply the law of the case and (2) determined that no contract existed between the parties. We affirm the judgment of the trial court.

The court's memorandum of decision contains the following facts. The plaintiff is an attorney who also holds a master's degree in real estate and finance. In 1996, he provided consulting services to Sowamco, a Texas based organization that sought to sell certain troubled assets it previously had acquired.[3]

In his complaint, the plaintiff alleged that he and the defendant agreed to form a limited liability company for the purpose of purchasing and reselling real estate, in which they would be equal partners and divide all

[1] Although not licensed to practice law in this state, the court specifically found that the plaintiff is an attorney in light of his testimony that he obtained a law degree from the University of San Francisco School of Law and thereafter passed the Connecticut bar examination. In his appellate brief, the plaintiff does not contest that finding. We note also that the plaintiff was represented by counsel throughout this action prior to commencing the present appeal.

[2] The plaintiff also named Therese Thorndike as a defendant in his original complaint. The action against her was withdrawn, and she is not a party to this appeal. We therefore refer in this opinion to Thomas Thorndike as the defendant.

[3] Although the plaintiff asserts in his appellate brief that the record does not substantiate the finding that he worked as a consultant to Sowamco, he testified at trial that, in 1996, he "was doing some consulting work with a group out of Texas. These people typically would attack an area. They had a bunch of rich Texans who put money into a pot and their objective was to buy pools of nonperforming loans and credits. I was hired as an asset manager for them and saw many, many properties along the way and evaluated them in that particular endeavor." Later in his testimony, the plaintiff stated that he "was a consultant" to the seller of the three properties at issue that were purchased by Diko Development, LLC.

profits equally. That alleged agreement was not reduced to writing. In January, 1997, the defendant formed Diko Development, LLC (Diko), which consisted of two members—the defendant and Therese Santoro, who at that time was the defendant's wife and known as Therese Thorndike. It is undisputed that the plaintiff was not a member of Diko. Nevertheless, the plaintiff that month wrote two checks payable to the defendant totaling $82,000. Acting on behalf of Sowamco, the plaintiff in February, 1997, oversaw the bulk sale of three Connecticut properties to Diko, which Diko in turn sold to third parties for a profit in subsequent years.

In 2001, the plaintiff filed his original complaint against the defendant alleging breach of contract and embezzlement arising from the parties' failed attempt to form a limited liability company. A court trial followed. After the plaintiff rested his case, the defendant moved to dismiss the action pursuant to Practice Book § 15-8, which the court granted. In so doing, the court ruled that the plaintiff had not made out a prima facie case of breach of contract because he failed to establish damages and had not made out a prima facie case of embezzlement because he failed to establish ownership of the property at issue.

From that judgment, the plaintiff appealed to this court. Although we concluded that the court properly dismissed the embezzlement claim, we disagreed with the dismissal of the breach of contract claim. We stated: "The record supports the court's finding that the plaintiff produced sufficient evidence to establish both the purchase price and sales price of each property. Viewed in the light most favorable to the plaintiff, we conclude that the evidence was sufficient at this early stage of the proceedings to show that a profit was made on the sale of the three properties. . . . Whether the plaintiff can sustain his burden past this stage of the proceedings is an entirely different matter and not a question that

this court needs to answer to resolve this claim. The plaintiff has presented sufficient evidence of damages as an element of his breach of contract claim to survive the defendant's motion for a judgment of dismissal." (Citations omitted.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 305, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008). We therefore reversed that portion of the judgment of the court and remanded the matter "for a new trial as to breach of contract." Id., 313.

A new trial was held over the course of three days in June, 2010. In its memorandum of decision, the court concluded that the plaintiff failed to establish the existence of a contract with the defendant. The court therefore rendered judgment in favor of the defendant, and this appeal followed.

I.

The plaintiff first claims that the court improperly departed from the law of the case. More specifically, he maintains that the court erred because (1) the original trial court, in dismissing his breach of contract claim for failure to make a prima facie case of damages, also determined that sufficient evidence of an oral contract existed for purposes of surviving the defendant's motion to dismiss and (2) in reversing the dismissal of the breach of contract claim, this court "confirmed that the trial court specifically found that a contract had been formed and that the defendant breached the contract." The plaintiff's claim fundamentally misunderstands the law of the case doctrine.

The law of the case doctrine "expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case . . . ."

(Citation omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 448–49, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). As this court recently explained, "the law of the case doctrine does not preclude a judge from deciding an issue in a way contrary to how it was decided by a predecessor judge in the same case. . . . [It] provides that judges may treat a prior ruling as the law of the case if they agree with the determination. He or she may, however, decide the issue differently if he or she is convinced that the prior decision is wrong." *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 8–9, 33 A.3d 848 (2012).

In the original proceeding, the trial court did not determine that a contract existed between the parties. Rather, in deciding a motion to dismiss pursuant to Practice Book § 15-8, in which the court must accept as true the evidence submitted by the plaintiff and interpret it in a light most favorable thereto; see *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); the court merely determined that the plaintiff under that minimal standard had submitted evidence of the existence of a contract sufficient to permit the case to proceed to a presentation of the defendant's case and avert dismissal on that distinct basis.[4] Likewise, in reversing the judgment of dismissal as to the breach of contract claim, we concluded that the evidence, viewed in the light most favorable to the plaintiff "at this early stage of the proceedings," was sufficient "to survive the defendant's motion for a judgment of dismissal." *Sullivan* v. *Thorndike*, supra, 104 Conn.

---

[4] In its oral decision on the defendant's motion to dismiss pursuant to Practice Book § 15-8, the court found that "[t]here was sufficient evidence to find that there existed at the last quarter of 1996 an oral contract and that the plaintiff and the defendant agreed that they would purchase and sell real estate together and share the profits." (Internal quotation marks omitted.) *Sullivan* v. *Thorndike*, supra, 104 Conn. App. 304.

App. 305. At the same time, we emphasized that "[w]hether the plaintiff can sustain his burden past this stage of the proceedings is an entirely different matter and not a question that this court needs to answer to resolve this claim." Id. Neither the original trial judge nor this appellate body definitively determined that a contract in fact existed between the parties. Accordingly, the law of the case doctrine is inapplicable to the present proceeding.

II

The plaintiff also challenges as clearly erroneous the court's finding that he failed to establish the existence of a contract with the defendant to form a limited liability company. We disagree.

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Citation omitted; internal quotation marks omitted.) *St. Germain* v. *St. Germain*, 135 Conn. App. 329, 333, 41 A.3d 1126 (2012).

At trial, the parties presented contrasting explanations for the plaintiff's payment of $82,000 to the defendant in 1997. The court credited the defendant's testimony that the plaintiff's $82,000 payment to him in January, 1997, constituted a loan to Diko. The defendant testified that he and the plaintiff were childhood friends and former business associates. The defendant further testified that, in early 1997, Sowamco was "in a rush" to sell the three properties at issue, and because he "didn't have all the money to buy them [the plaintiff]

offered to lend [him] the money . . . . We put a promissory note together and he gave me the money, $82,000." Santoro similarly testified that Diko had secured a loan from the plaintiff in order to purchase the three properties in 1997. That testimony was corroborated by a promissory note dated January 15, 1997, that the plaintiff introduced into evidence, which specified Diko as "borrower" and the plaintiff as "lender" for a principal amount of $82,000. The court did not credit the plaintiff's testimony that the $82,000 was not a loan, but an investment of capital in return for membership in Diko, emphasizing that the plaintiff on cross-examination conceded that said payment was a loan to Diko and that he could be considered a creditor thereof. Such credibility determinations are the exclusive province of the trial court as fact finder, which we refuse to disturb. See *Hogan* v. *Lagosz*, 124 Conn. App. 602, 612, 6 A.3d 112 (2010), cert. denied, 299 Conn. 923, 11 A.3d 151 (2011).

In addition, the court credited evidence that, despite his legal training and master's degree in real estate and finance, the plaintiff never examined Diko's records to verify that they reflected his membership interest. The court found, on the undisputed evidence before it, that the plaintiff was not a signatory on Diko's bank accounts and did not sign any agreements or documents on its behalf. The court likewise found that the defendant "was responsible for the day-to-day management of the three properties and that he engaged independent contractors and paid expenses which were incurred." The evidence at trial also indicated that despite receiving various payments from Diko in the years following its purchase of the Connecticut properties, which he characterized as profits in his amended complaint and trial testimony, the plaintiff never declared any profits from Diko on his income tax returns.[5]

---

[5] The court further found, and the plaintiff does not dispute, that the defendant made $84,788.28 in monetary payments to the plaintiff between

In light of the foregoing, the court determined that "no agreement between [the parties] was consummated" and that the plaintiff's payment of $82,000 was simply a "loan to a childhood friend" made in order to facilitate the purchase of the three properties from Sowamco. The record before us contains evidence substantiating those findings. Accordingly, we cannot say that the court's finding that the plaintiff failed to prove the existence of a contract with the defendant to form a limited liability company was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

May, 1997, and August, 2000, and $15,000 in-kind payments to the plaintiff in the form of free rental of a property in Woodbury owned by Diko from August, 1999, to May, 2000.